732 A.2d 599

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Neil Werner PRICE, Respondent.**

Supreme Court of Pennsylvania.

Argued April 27, 1999.

Decided June 24, 1999.

168

Mark G. Weitzman, Pittsburgh, for Disciplinary Board.

Neil Werner Price, Johnstown, Pro Se.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This disciplinary matter commenced with the filing of a Petition for Discipline by the Office of Disciplinary Counsel on August 1, 1995. Respondent, Neil Werner Price, was therein charged with filing court documents that contained false allegations against two District Justices and an Assistant District Attorney. He was also charged with completing portions of Department of Public Welfare (DPW) forms designated to be completed by a medical provider and signing the forms as "Dr. Neil Price, J.D." The Hearing Committee and the Disciplinary Board found that Respondent committed various disciplinary violations and recommended that he be suspended from the practice of law for a period of at least one year and one day. Upon independent review of the record, we conclude that Respondent engaged in the alleged misconduct and hold that the appropriate sanction is a five-year suspension from the practice of law.

The first charge of misconduct involves various written assertions Respondent made in three court documents. To understand the nature of the documents filed, a brief factual background is necessary. On July 24, 1990, Judge Caram Abood of the Cambria County Common Pleas Court issued an order directing that District Justice Rick Farra recuse himself from all matters involving parties represented by Respondent. The order was based on the fact that District Justice Farra was a Commonwealth witness in a then pending criminal proceeding against Respondent.[1] On September 3, 1991, an order was entered vacating the recusal order. On September 6, 1991, Respondent filed a "Motion for Reconsideration" of the order vacating recusal, wherein he asserted that

due to the case circumstances, it is axiomatic that either Justice Farra eagerly participated in an undercover effort

1. Respondent indicates that he had been charged with violating the Wiretap Act, 18 Pa.C.S. § 5703, by disclosing to District Justice Farra a transcript from an authorized wiretap interception that had been taken in connection with an ongoing political matter in Cambria County. Although the record is not clear regarding the precise disposition of this criminal matter, it is apparent that Respondent was never convicted.

against Attorney Price, inducing him to deliver contraband arguably constituting a crime, thus creating a crime, OR [sic] Justice Farra eagerly reported an otherwise unreportable offense to curry favor with the state police and attorney general, either situation exhibits a running, bitter controversy that necessitates recusal.

On March 29, 1993, while representing Thomasine Darr in a landlord/tenant action brought by John Anthony, Respondent filed with District Justice Farra a document entitled "Notice of Jurisdictional Defect." Therein, Respondent implied that District Justice Farra authorized Anthony's complaint because Anthony was a former state trooper. He went on to state, "Favoring a state trooper comrade to the extent of colluding in their baseless suits is a form of OFFICIAL OPPRESSION, within the meaning of 18 Pa.C.S. 5301(1). . . ."

On April 14, 1993, Respondent filed in the Cambria County Common Pleas Court a document entitled, "Notice of Objections to Jurisdiction; Demand for Dismissal of Complaint; Demand for Writs of Habeas Corpus Ad Testificandum; Demand for I.F.P. Status." Respondent filed this document in response to criminal charges that had been filed against him as a result of an incident which occurred in District Justice Farra's office earlier that month.[2] Respondent therein asserted that District Justice Allen Berkheimer "abused his office by seeking to fix citations from other jurisdictions," "assumed a prosecutorial bias to ingratiate himself with disciplinary and other authorities," and "bothered several constituents with sexually harassing contacts." He further alleged that District Justice Farra's "coercion over various law enforcement or political officials, including those presumably superior to the former's position is well known." Finally, Respondent asserted that Assistant District Attorney John Kalenish's "malice toward [Respondent] is partly explicable by [Respondent's]

---

2. Respondent's filing indicates that he was charged with, *inter alia*, witness intimidation, 18 Pa.C.S. § 4952, obstructing administration of law, 18 Pa.C.S. § 5101, and hindering apprehension or prosecution, 18 Pa.C.S. § 5105(a)(3). The record establishes that these charges were ultimately dismissed.

inadvertent discovery of J.R. Kalenish's embezzlement of a private client's judgment...."

The second charge of misconduct involves Respondent's completion and submission of two DPW Medical Assessment Forms, which are used to determine whether an individual is disabled for purposes of receiving public assistance benefits. Section II of the form designates that it is to be completed by a physician and includes sections for an evaluation of the claimant's physical/mental capacity and the physician's description of the diagnosis and functional limitations of the claimant.

Respondent completed a form dated September 15, 1992, wherein he asserted that his client, James Custer, was "incapacitated." Respondent described Custer's diagnosis, medications and functional limitations and inserted factual information regarding his medical care. In the area designated for the identification of the "medical provider" who prepared the form, Respondent signed, "Dr. Neil Price, J.D." Respondent listed the address of his law office as the address of the medical provider. He further listed the "date of last examination" as "9/15/92."

Respondent made similar assertions in a second DPW Medical Assessment form dated March 12, 1993, which he filed on behalf of his client, Mary E. Smith. Respondent asserted that Smith was "incapacitated" and described her diagnosis, medications and functional limitations. Respondent's name again appeared as "Dr. Neil Price, J.D." and Respondent's law office address was listed as the address of the medical provider. The "date of last examination" was listed as "3/12/93." Respondent concedes that he was not a physician or medical provider of any kind at the time the forms were completed.

Several evidentiary hearings on both charges of misconduct were held throughout 1996 and 1997. The Hearing Committee found that the assertions made in Respondent's court filings were either knowingly false or recklessly made without regard for their falsity. Accordingly, the Committee found that Respondent violated Rules of Professional Conduct 3.1

(lawyer shall not assert issue unless there is a basis for doing so that is nonfrivolous), 3.3(a)(1) (lawyer shall not knowingly make a false statement of material fact to tribunal), 8.2(b) (lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer), 8.4(c) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation), and 8.4(d) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

The Committee also found that the manner in which Respondent completed DPW forms violated Rules of Professional Conduct 4.1(a) (lawyer shall not knowingly make a false statement of material fact or law to a third person in the course of representing a client) and 8.4(c) (it is professional misconduct for a lawyer to engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The Disciplinary Board agreed with the Committee that Respondent violated the aforementioned Rules of Professional Conduct and also recommended a suspension of one year and one day.[3]

In attorney disciplinary matters, our review is de novo. We are not bound by the findings or recommendations of the Disciplinary Board, although we give them substantial deference. *Office of Disciplinary Counsel v. Chung*, 548 Pa. 108, 695 A.2d 405 (1997). Because Respondent vehemently disputes the lower tribunals' finding that his allegations were without factual support, we begin our analysis with an examination of whether the assertions Respondent made in his court pleadings constitute "false statements" and "false accusations against a judge" in violation of Rules of Professional Conduct 3.3(a)(1) and 8.2(b), respectively. We also must determine whether the filling of the allegations amounted to "misrepresentation" in violation of Rule 8.4(c).

We first address a preliminarily matter regarding the placement of the burden of proof in such circumstances. We note that the burden of proving professional misconduct

---

**3.** Two Board members dissented and would have recommended a three year suspension.

lies with the Office of Disciplinary Counsel. *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994). The Office of Disciplinary Counsel must prove the misconduct by a preponderance of the evidence and the proof must be clear and satisfactory. *Id.* It is well-established, however, that every court pleading containing an averment of fact not of record is required to state that the assertion is true based upon the pleader's personal knowledge, information or belief and shall be supported by oath or affirmation or made subject to the penalties of 18 Pa.C.S. § 4904. *See* Pa.R.C.P 1024; Pa.R.C.P. 76. In other words, the pleader in a court proceeding bears the burden of establishing a factual basis upon which his allegations are based. Similarly, the *Comment* to Rule 3.3(a)(1), which prohibits a lawyer from making false statements of material fact to a tribunal, states that

> an assertion, purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.

■ Thus to establish a prima facie case of making false statements or accusations as set forth in Rules 3.3(a)(1) and 8.2(b), the Office of Disciplinary Counsel bears the initial burden of establishing that an attorney, based upon his own knowledge, made false allegations in a court pleading.[4] This can be accomplished by presenting documentary evidence or testimony from the victims of the allegations stating that the allegations are false. The burden then shifts to the respondent to establish that the allegations are true or that he had an objective reasonable belief that the allegations were true, based upon a reasonably diligent inquiry.[5]

**4.** Rule 8.2(b) contains the additional requirement that the accusation be made against a judge or other adjudicatory officer.

**5.** Respondent has repeatedly noted that the victims of his accusations never filed responsive pleadings to dispute the veracity of his statements. (See N.T. 2/16/1996 at 21; 2/26/97 at 52–53; 2/27/1997 at 170). There is not and never has been a burden on the victim of an allegation to prove that the assertions made against him are false.

Respondent opposes the application of an objective standard in determining whether the pleader reasonably believed the accusations were true. He contends that the Office of Disciplinary Counsel should have to prove that his purposeful intent was to defraud the judicial officers with false statements. We reject this subjective approach as unworkable as a respondent would always be in the position of defending an allegation, no matter how scurrilous, on the ground that he *believed* it to be true. Reputation is an interest that is explicitly recognized and protected by the highest law in our Commonwealth, our Constitution. Pa. Const. Art. I, §§ 1, 11. We cannot permit it to be cavalierly tarnished by the filing of false and scandalous pleadings. While disciplinary infractions involving the conversion of funds can be remedied by restitution, the damage done to one's reputation by the assertion of slanderous allegations is irreparable. Accordingly, we find that an objective standard, which examines the factual basis for the assertion, is necessary to protect the public, the profession and the courts.

■■■ When the alleged misconduct is misrepresentation in violation of Rule 8.4(c), a prima facie case is made where the record establishes that the misrepresentation was knowingly made, or made with reckless ignorance of the truth or falsity of the representation. *Office of Disciplinary Counsel v. Anonymous Attorney A,* 552 Pa. 223, 233, 714 A.2d 402, 407 (1998). Recklessness may be described as "the deliberate closing of one's eyes to facts that one had a duty to see or stating as fact, things of which one was ignorant." *Id.*

Keeping these standards in mind, we next examine the specific allegations made by Respondent. We begin by noting that District Justice Farra and District Justice Berkheimer as well as Assistant District Attorney Kalenish each testified unequivocally that the allegations Respondent made against them were untrue. (N.T. 10/10/96 at 11–15; N.T. 9/24/96 at 25–37; 95–105) Respondent first asserted that Farra participated in an "undercover effort" against him, "induced him to deliver contraband" or "reported an otherwise unreportable offense to curry favor with the state police and the attorney

general." These allegations were made after Respondent had been charged with disclosing to Farra the transcript of an authorized wiretap interception. The assertions were included in a motion challenging the vacation of an order directing the recusal of Farra. Other than laying this factual background, and asserting that Farra 'had had previous communications with the Attorney General's Office, Respondent has presented no evidence establishing a factual basis to support his allegations. Respondent's unsupported suspicions do not give rise to an objective, reasonable belief that the allegations were true. Moreover, Respondent has not suggested that he engaged in any reasonably diligent inquiry to determine whether his assertions were accurate. Instead, Respondent testified that the statements reflected his "perceptions" and "impressions." (N.T. 2/26/97 at 32).

Respondent also alleged that Farra approved a litigant's complaint in a landlord/tenant matter on the basis that the litigant was a former state trooper. Notwithstanding Respondent's lack of evidence of Farra's bias, the record establishes that Respondent did not even have personal knowledge that the litigant was ever a state trooper.[6] Finally, Respondent asserted that Farra's "coercion over various law enforcement or political officials is well-known." Respondent made this allegation in a document that he filed with the court three or four days after he had been jailed on charges that were dismissed. (*See* footnote two, *supra*). Respondent acknowledged that the allegations "weren't necessarily made in the most charitable frame of mind toward [his] accusers." (N.T. 11/13/96 at 59). He failed, however, to present any evidence of Farra's "coercion" or any factual basis upon which he could have reasonably relied in believing this statement to be true.

Respondent also relied on rumors and innuendo in making accusations against District Justice Berkheimer. He first contended that Berkheimer fixed citations from other jurisdic-

6. Respondent testified that a local constable told him that the litigant was a former state trooper. (N.T. 2/26/97 at 48). He later testified regarding the assertion, "If it happens to be inaccurate, I don't know, you know." (N.T. 2/26/97 at 55).

tions. Although Respondent asserted that he had heard from others that Berkheimer had been reported for a disciplinary problem (N.T. 11/13/96 at 77), he stated that he did not know whether or not Berkheimer sought to fix any citations. *Id.* at 79. Regarding Respondent's allegation that Berkheimer "assumed a prosecutorial bias," he stated that he had heard conversations regarding what he considered to be "excesses" by Berkheimer. *Id.* Finally, Respondent asserted that Berkheimer "bothered several constituents with sexually harassing contacts." Respondent explained that his friend's girlfriend worked at a convenience store and had been harassed one evening by Berkheimer. Respondent was not present in the store when the alleged misconduct occurred and he presented no witnesses corroborating his claim. He further contended that he observed Berkheimer touch a female's leg in his office. Respondent, however, "did not bother" to question the woman concerning the incident, *id.* at 84, and did not cross-examine Berkheimer as to any allegations of harassment. This conduct does not demonstrate a reasonable inquiry into the veracity of the averments and instead displays a reckless disregard for the truth that damages the reputations of those falsely accused.

As to the allegation that Assistant District Attorney Kalenish embezzled a private client's funds, Respondent presented no competent evidence to substantiate any reasonable belief as to the truth of the statement. He presented no testimony from the private clients or any other witnesses and offered no documentary evidence that supported his claim. The record establishes that Respondent had no personal knowledge of any wrongdoing.

In summary, we have extensively reviewed the voluminous record in this matter and conclude that Respondent's allegations were either knowingly false or made without an objective reasonable belief that they were true. Instead of conducting a reasonably diligent inquiry into the accuracy of the statements, Respondent relied on rumors, innuendo and

his own perceptions.[7] Moreover, the vast amount of documentary evidence Respondent presented simply did not support his claims. Accordingly, he violated Rules 3.3(a)(1) and 8.2(b), relating to false statements and accusations. Because he deliberately stated as fact things of which he was ignorant, Respondent also violated Rule 8.4(c) relating to misrepresentations. Additionally, based on the foregoing, we concur with the Board's finding of violations of Rule 3.1, which precludes the assertion of frivolous issues, and Rule 8.4(d), concerning misconduct prejudicial to the administration of justice.

Before we determine the appropriate sanction for Respondent's misconduct, we must also consider his inappropriate completion and submission of DPW medical evaluation forms. As noted, on two separate occasions Respondent completed portions of the forms designated to be completed by "medical providers" and signed the forms "Dr. Neil Price, J.D." More significantly, he represented that his clients, James Custer and Mary E. Smith, were "incapacitated" and described their diagnosis, medications and functional limitations. Respondent contends that his behavior amounted to nothing more than "arrogance" as he did not intend to deceive the DPW by recovering benefits that were unwarranted. He asserts that he was familiar with the DPW personnel who processed the forms and submits that they were aware that Respondent was not a physician. Respondent further maintains that the use of the phrase "Dr. Neil Price J.D." is accurate because he is a "Juris Doctor."

■ Respondent's defenses are unpersuasive. In *Office of Disciplinary Counsel v. Anonymous Attorney A.*, we declined to require actual knowledge or intent to deceive on the part of the respondent to establish a disciplinary violation based on

7. This is demonstrated by Respondent's own testimony wherein he stated:

We have to understand, the problem I have in defending this is that we get into that nebulous area between what the facts are versus suggestions, implications, opinions, impressions, interpretations, perceptions, conclusions. I mean, a lot of these allegations are mixtures. In fact, all of them are mixtures of the same.

(N.T. 11/13/96 at 75).

misrepresentation. Moreover, the Office of Disciplinary Counsel presented evidence establishing that the information Respondent included on the forms was false. Upon DPW's request, Dr. William Hauger completed a second Medical Assessment Form on James Custer's behalf on September 28, 1992. Unlike the form completed by Respondent, Dr. Hauger stated that Custer was only "temporarily incapacitated" until December 1, 1992, at which time his benefits would cease. (N.T. 9/27/96 at 29). Regarding Mary E. Smith, the record establishes that after her form was submitted to DPW, she was denied social security benefits on the basis that she was able to be gainfully employed and was not incapacitated. (N.T. 9/27/96 at 36–37). This establishes that Respondent completed the medical forms with a reckless ignorance of the truth or falsity of the representations he made therein. Accordingly, Respondent's conduct amounts to misrepresentation in violation of Rule 8.4(c). We further concur with the Board's finding that Respondent's conduct violated Rule 4.1(a), relating to knowingly making false statements of material fact to a third person in the course of representing a client.

In determining the appropriate discipline to be imposed, we recognize that disciplinary sanctions are not designed for their punitive effects, but rather are intended to protect the public from unfit attorneys and to maintain the integrity of the legal profession and the judicial process. *Office of Disciplinary Counsel v. Christie*, 536 Pa. 394, 639 A.2d 782 (1994). We note that even at this stage of the proceeding, Respondent denies that he engaged in any wrongdoing and submits that he should not be subject to any form of discipline. This indicates that Respondent has no understanding of the potential damage he may have caused to the victims' reputations and to the functioning of our legal system, which is based upon good faith representations to the court. Moreover, the false allegations against District Justice Farra and District Justice Berkheimer included attacks upon their performance of official duties. Such scandalous accusations erode the public confidence in the judicial system in general and in these District Justices in particular. This misconduct is ag-

gravated by Respondent's callous disregard for the truth as demonstrated by his misrepresentations set forth in the DPW medical evaluation forms. We find that this most serious misconduct warrants a five-year suspension from the practice of law.

Accordingly, we impose a five-year suspension. We further order that Respondent shall comply with the provisions of Pa.R.D.E. 217 and shall pay costs, if any, to the Disciplinary Board pursuant to Pa.R.D.E. 208(g).

Chief Justice FLAHERTY files a dissenting opinion in which Justices CASTILLE and NIGRO join.

FLAHERTY, Chief Justice, dissenting.

The appropriate discipline, in my view, is disbarment.

Justices CASTILLE and NIGRO join this dissenting opinion.