**Office of Disciplinary Counsel v. Krosby**

Disciplinary Board Docket no. 125 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

RASPANTI, *Member,* July 12, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 9, 2003, Office of Disciplinary Counsel filed a petition for discipline against respondent, Mr. Erling Rolf Krosby. The petition charged respondent with alleged misconduct in connection with court proceedings in Texas, which conduct allegedly violated the Texas Disciplinary Rules of Professional Conduct. Respondent filed an answer to petition for discipline on November 24, 2003.

A pre-hearing conference was held on March 15, 2004, in which respondent participated via telephone

conference call. Respondent agreed to certain proposed joint stipulations; however, respondent never signed the joint stipulations of law and fact which memorialized the agreements reached during the pre-hearing conference.

A disciplinary hearing was held on April 27, 2004, before Hearing Committee 1.13, comprised of Chair James J. Zwolak, Esquire, and Members Douglas E. Ress, Esquire and Edward R. Paul, Esquire. Respondent did not appear at this hearing. The committee took judicial notice of respondent's prior agreement to the stipulations presented at the hearing. Respondent's exhibits R-1 through R-4 were admitted into evidence.

Following the submission of briefs by the parties, the Hearing Committee filed a report on September 16, 2004, finding that respondent violated the Texas Disciplinary Rules of Professional Conduct 3.01, 3.02, 3.03(a)(1), 3.04(d), and 5.05(a), and recommending that respondent be suspended for a period of five years.

Respondent filed a brief on exceptions, and although he had not appeared at the underlying hearing, requested oral argument on October 5, 2004. Petitioner filed a brief opposing exceptions on October 25, 2004.

Extended oral argument was held on January 10, 2005, before a three-member panel of the Disciplinary Board chaired by Marc S. Raspanti, Esquire, with Members Laurence H. Brown, Esquire and Min S. Suh, Esquire. Respondent represented himself at the oral argument held in Philadelphia.

This matter was adjudicated by the Disciplinary Board at the meeting of January 19, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said rules.

(2) Respondent, Erling Rolf Krosby, was born in 1925 and was admitted to practice law in the Commonwealth in 1990. He does not now, nor has he ever maintained an office for the practice of law in the Commonwealth of Pennsylvania. His attorney registration address is 2243 Foreland Drive, Houston, Texas 77077. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior record of discipline.

(4) Although respondent's address is in Texas, he is not admitted to practice law in the State of Texas other than through a pro hac vice motion.

### Procedural Background

(5) On August 14, 1991, Burton Securities S.A. filed a voluntary Chapter 11 Bankruptcy petition in the United States Bankruptcy Court of the Southern District of Texas, Corpus Christi Division. The Honorable Richard S. Schmidt was assigned to preside over the Chapter 11 reorganization.

(6) Among Burton Securities' scheduled creditors were Kleberg & Head P.C., a law firm that represented Burton Securities in an admiralty action, for its unpaid legal fees; Tor Husjord A/S, the manager of a sailing vessel owned by Burton Securities, for its unpaid management fees; Memories Inc.; Marcus Byrd; and Majestic Ltd.

(7) Robert W. Woolsey, Esquire, represented Tor Husjord Shipping A/S, Memories Inc., Marcus Byrd, and Majestic Ltd., in the Chapter 11 case through 1995. Respondent assisted Mr. Woolsey in the Chapter 11 proceedings, attending hearings and drafting documents for Mr. Woolsey.

(8) Kleberg proposed a Reorganization Plan on behalf of all creditors. The creditors voted to accept the Plan and Judge Schmidt approved the Plan on December 1, 1992.

(9) The Plan provided that Tor Husjord Shipping A/S was a Tier 3 and partially Tier 4 creditor, receiving partial payment of its proof of claim after Tier 1 and Tier 2 creditors. Tor Husjord did not appeal this order of payment set forth in the confirmed Plan.

(10) The Plan included a liquidation trust agreement that provided for the appointment of Harrell Z. Browning, Esquire as the liquidating trustee.

(11) Trustee Browning's duties were to liquidate the assets of the estate. The liquidation trust agreement provided that Trustee Browning was liable for his willful misconduct, bad faith or gross negligence, but exempted Trustee Browning from liability for breach of contract in the performance of his duties and his discretionary acts.

(12) The liquidation trust agreement provided that Kleberg could remove Trustee Browning with or without cause, at any time. On or before March 17, 1994, Mr.

Woolsey requested that Kleberg remove Trustee Browning. Kleberg refused to remove Trustee Browning. Mr. Woolsey took no further direct action to remove Trustee Browning.

(13) One of Burton Securities' primary assets was a gaming/cruise ship (the vessel). After two unsuccessful efforts to sell the vessel, Trustee Browning filed his third motion to sell the vessel on December 20, 1994.

(14) After all the creditors and their counsel, including respondent, received notice of the proposed sale, Judge Schmidt approved the motion to sell the vessel.

(15) Respondent met privately with Trustee Browning concerning distribution of the proceeds of the sale of the vessel. Respondent argued that Tor Husjord Shipping's secured claim had priority over the payment scheme set forth in the confirmed Reorganization Plan. After Trustee Browning disagreed with respondent's interpretation of the Plan, respondent threatened to sue Trustee Browning. Trustee Browning informed respondent that he would seek clarification of the distribution from the bankruptcy court.

(16) On June 2, 1995, Trustee Browning filed a motion for approval of proposed distribution to creditors and declaration of the relative rights of the parties participating in the distribution. On July 12, 1995, the bankruptcy court ruled that the confirmed plan of reorganization set forth the priorities for distribution and that the liquidating trustee make distribution according to the priorities provided in the Plan.

(17) On July 12, 1995, Judge Schmidt granted Trustee Browning's motion for approval of proposed distribution to creditors and approved Trustee Browning's ap-

plication for his total fee. Respondent did not request a stay of the distribution of the proceeds to the creditors.

(18) Tor Husjord appealed to the federal district court the bankruptcy court's ruling in Trustee Browning's motion for approval of proposed distribution to creditors. On July 2, 1996, the federal district court affirmed the bankruptcy court's ruling and denied Tor Husjord relief.

(19) Respondent subsequently filed four adversary complaints against Trustee Browning and others in the Bankruptcy Court for the Southern District of Texas. After the bankruptcy court granted defendants' motions for summary judgment, respondent filed an appeal to the United States District Court for the Southern District of Texas, Corpus Christi Division. Furthermore, on November 19, 1999, respondent filed a motion for a writ of mandamus in the United States District Court for the Southern District of Texas, Brownsville Division.

(20) Following the denial of all relief in Federal District Court, respondent filed five unsuccessful related appeals to the Fifth Circuit Court of Appeals. Finally, respondent petitioned for certiorari to the Supreme Court of the United States, which was denied.

### Charge I—Repeated Violations of a Tribunal's Rules

(21) On May 30, 1997, almost two years after the bankruptcy court approved the distribution plan, respondent filed an adversary complaint in the United States District Court for the Southern District of Texas, Brownsville Division. The District Court referred the complaint to the bankruptcy court and venue was transferred to Corpus Christi.

(a) Tor Husjord Shipping A/S, Marcus Byrd, Majestic Ltd., and Memories Inc., creditors in the underlying Chapter 11 case, were plaintiffs in the adversary action.

(b) Respondent named Kleberg and Trustee Browning as defendants in the adversary action.

(c) Respondent subsequently added Continental Insurance Company as a defendant.

(22) On August 5, 1997, Kleberg filed an answer to the complaint.

(23) On November 26, 1997, respondent filed a motion for leave of court to file an amended complaint.

(24) Respondent filed his first amended complaint on January 23, 1998. Respondent filed his second amended complaint on September 8, 1998.

(25) The Bankruptcy Court granted defendants' motions for summary judgment on March 19, 1999.

(26) Respondent filed his third amended complaint on May 24, 1999.

(27) Fed.R.C.P 15(a) provides that a party may amend a pleading only once as a matter of course before a responsive pleading is served, otherwise a party may amend the pleading only by leave of court.

(28) Respondent did not obtain leave of court to file the first, second and third amended complaints.

(29) Respondent filed the first, second, and third amended complaints after service of defendants' response.

### Charge II—Erroneous Mandamus Motion

(30) Each federal district court may provide that any or all bankruptcy proceedings shall be referred in the first instance, to the bankruptcy judge for the federal dis-

trict. If a litigant wants the federal district court to hear a bankruptcy matter then the litigant may file a "motion to withdraw the reference."

(31) Local Rule 5011 of the United States Bankruptcy Court for the Southern District of Texas provides that a motion to withdraw the reference to the bankruptcy court shall be filed with the clerk of the bankruptcy court, and unless the district court orders otherwise, shall first be presented to the bankruptcy judge for recommendation to the district court.

(32) On May 24, 1999, respondent filed a motion to withdraw reference with the bankruptcy court requesting to be heard in the Brownsville Division.

(33) On November 19, 1999, respondent filed a motion for a writ of mandamus in the United States District Court for the Southern District of Texas, Brownsville Division. The mandamus requested the district court to order the bankruptcy court in Corpus Christi to withdraw the reference and transfer the case to the Brownsville District Court.

(34) Respondent explained in the motion that "on several occasions [he] reminded the bankruptcy court to transmit plaintiff's motion to withdraw reference," and filed the mandamus because "no delay in transmitting the motion [was] justified. (P-11, p. 3.)

(35) Title 28 U.S.C. §158(a) provides that once the venue of a bankruptcy proceeding is established, the appeal from the bankruptcy court is "only to the district court for the judicial district in which the bankruptcy judge is sitting."

(36) Respondent did not file the mandamus with the Corpus Christi Division of the District Court, the District Court where the bankruptcy judge was sitting. Re-

spondent wanted the Brownsville District Court to hear the appeal because he believed the trustee "did not have any close connections with the judges in Brownsville." (N.T. pre-hearing conference p. 103.)

(37) The Honorable Janis Jack of the United States District Court for the Southern District of Texas, Corpus Christi, found respondent's suggestion that the district court in Corpus Christi lacked impartiality, since it sits in the same city as the bankruptcy court and the litigants, to be "outrageous." (P-17 p. 13.)

(38) Respondent orally withdrew his motion for a writ of mandamus at a February 4, 2000 hearing before Judge Jack.

### Charge III—Frivolous, Vexatious Complaints As to Kleberg

(39) Respondent's original complaint against Kleberg on behalf of certain creditors such as Tor Husjord Shipping, alleged that Kleberg owed the creditors a fiduciary duty, breached the fiduciary duty when Kleberg did not fire Trustee Browning, and committed legal malpractice.

(40) Under well-established Texas law, there is no attorney-client relationship absent a specific showing of privity of contract or intent, and an attorney owes no professional duty to a third party or non-client.

(41) Kleberg only represented itself as a creditor in the Chapter 11 reorganization and did not have an attorney-client relationship with the other creditors. There was an order of record to that effect entered by the bankruptcy court long before the original complaint against Kleberg was filed.

(42) Under Texas law there is a two-year statue of limitations for legal malpractice actions.

(43) Respondent filed the original complaint more than three years after the purported malpractice.

(44) Judge Schmidt found that there were no genuine issues of material fact and granted Kleberg's motion for summary judgment and dismissed the complaint.

### Frivolous, Vexatious Complaints
### As to Browning

(45) Trustee Browning was appointed as the liquidating trustee pursuant to a conformed Chapter 11 Plan. The only signatories to the liquidating trust agreement were the attorney for the debtor and Trustee Browning.

(46) Trustee Browning was not hired to act in any legal capacity for the creditors. Trustee Browning was neither a fiduciary under the liquidating trust agreement nor was he acting as an attorney. As trustee, Mr. Browning retained counsel.

(47) Trustee Browning undertook considerable time and effort to sell the vessel. Numerous hearings occurred in the bankruptcy court concerning Trustee Browning's efforts to sell the vessel, all of which Tor Husjord Shipping's counsel attended.

(48) There were three separate approvals to sell the vessel, although all but the last approved sale fell through, with at least one potential buyer surrendering its deposit monies to the bankruptcy estate.

(49) Trustee Browning did not enter into any agreement with any prospective purchaser without prior knowledge of counsel for Tor Husjord Shipping.

(50) During the course of the bankruptcy proceedings leading up to the sale of the vessel, neither Tor Husjord,

nor its counsel ever protested to Trustee Browning about the sale of the vessel. Nor did they protest his being paid as the liquidating trustee, or appeal any order approving payments to him as the liquidating trustee.

(51) Pursuant to order of the bankruptcy court, the vessel was sold on May 5, 1995, and money exchanged on that date.

(52) After the money was received, Trustee Browning was contacted by respondent on behalf of Tor Husjord to convince Trustee Browning that his client was a secured creditor entitled to its claim paid before distribution to other creditors, and to threaten suit against Trustee Browning if he did not so distribute the proceeds.

(53) In the face of that threat of suit, Trustee Browning filed a motion for approval of the distribution which brought before the bankruptcy court the issue raised by respondent about the order of distribution. After hearing, at which respondent's objection on behalf of Tor Husjord was heard, Judge Schmidt overruled the claim, and approved Trustee Browning's distribution treatment of respondent's client.

(54) An appeal was taken from the order approving the distribution, although no bond was posted on appeal, and no stay requested or granted. By opinion of July 2, 1996, Judge Jack rejected this appeal on various bases, including that Tor Husjord had participated in the confirmation of the plan without objection, never appealed from the confirmation of the plan, which confirmation order was binding and res judicata, and that the appeal was moot in that no stay had been sought and the plan had already been consummated.

(55) Over 10 months after this appeal was rejected, on May 30, 1997, respondent, who was on a contingent fee

basis, filed the original complaint against Trustee Browning. Respondent's original complaint against Trustee Browning accused him of breach of contract, lack of effort to sell the vessel, and legal malpractice.

(56) The original complaint against Trustee Browning was baseless in that Trustee Browning had no contractual duties toward the named plaintiffs, did not owe or breach any contractual duties toward the named plaintiffs and did not engage in any legal malpractice toward the named plaintiffs, whom he did not represent in any legal capacity.

(57) By opinion dated March 19, 1999, Judge Schmidt granted summary judgment in favor of Trustee Browning and against plaintiffs on whose behalf respondent filed suit. Judge Schmidt found that "every material action by the trustee, of which plaintiffs complain, was the subject of this court's order approving the action." (P-19.)

(58) Judge Schmidt found that as a matter of law, respondent's claims against Trustee Browning were barred by the doctrine of res judicata.

(59) Judge Schmidt found, among other things, that Trustee Browning's conduct was in accordance with the business judgment rule, that Trustee Browning had no legal duty or obligation as an attorney toward the plaintiffs.

(60) Immediately thereafter Judge Schmidt also granted Continental's motion to dismiss the complaint.

(61) Respondent had filed plaintiffs' first and second amended complaints without leave of court before Judge Schmidt granted summary judgment for defendants.

(62) In the first amended complaint, Trustee Browning was accused of making misrepresentations and false

statements to the court and the creditors, which was not true.

(63) In the second amended complaint, Trustee Browning was accused of intentional obstruction of justice and fraud with respect to his trustee's bond, which was not true.

(64) Respondent then filed the third amended complaint, on May 24, 1999, over two months after Judge Schmidt granted summary judgment for defendants, raising claims of bankruptcy fraud and mail fraud as predicate actions to a RICO claim.

(65) In the third amended complaint, Trustee Browning was accused of conspiring with Kleberg and others to reduce the value of the estate, which was not true.

(66) In opposition to the summary judgment motion, respondent did not file any counter affidavits to sufficiently demonstrate that there were facts in dispute or that he needed additional discovery before the matter could be ruled upon (which he only orally expressed to the court), and he never served any discovery to elicit information sufficient to defeat summary judgment.

(67) On appeal from the bankruptcy court's grant of summary judgment, Judge Jack reviewed all four of respondent's adversary complaints.

(68) Judge Jack found that "the original, first, second and third amended complaints were filed in bad faith for the purpose of harassing defendants in an attempt to obtain a settlement for plaintiffs, and were filed without first conducting a reasonable inquiry into the facts of the case or the applicable law." (P-17, p. 9.)

(69) Judge Jack found that the "original, first, second, and third amended complaints were signed by [respon-

dent] Krosby, and were used to pursue a course of conduct in which defendants were forced to hire attorneys and participate in frivolous litigation. (P-17, p. 9.)

(70) Judge Jack imposed monetary sanctions on respondent for presenting "pleadings signed by him for improper purposes, and needlessly increasing the cost of litigation." (P-17, p. 26.)

(71) When respondent threatened to sue Browning and others in another forum, Judge Jack issued an injunction prohibiting respondent from filing any other suits without first obtaining her approval.

(72) Trustee Browning testified that respondent's frivolous, harassing and vexatious lawsuits cost him, the other defendants, and the estate, a substantial amount of time, money and effort.

(73) Specifically, the estate spent about $75,000 defending the complaints, the insurance company spent about $75,000 defending the complaints, the Kleberg firm spent about $40,000 defending the complaints, and Trustee Browning, on his indemnity obligations to the insurance company which posted the trustee's bond, had to pick up part of the insurance company's costs on appeal.

(74) In addition, Trustee Browning spent time defending himself, which he estimated to be about $75,000 worth of his own time, accumulating along the way about 17 file boxes of litigation materials.

*Charge IV—Repeatedly Disobeyinq a*
*Court Order To Produce Client and*
*Making Misrepresentations to a Tribunal*

(75) On October 26, 1999, respondent filed in the United States District Court for the Southern District of

Texas, an appeal from the bankruptcy court's decisions dismissing the complaints filed against Kleberg, Trustee Browning, and Continental. By notice dated January 12, 2000, Judge Jack consolidated the bankruptcy appeal and the mandamus action for a hearing before her on January 24, 2000.

(76) On January 24, 2000, Judge Jack entered a sua sponte order to respondent to show authority to represent Tor Husjord and to have his client present for a hearing on January 26, 2000.

(77) On January 25, 2000, respondent filed a motion to continue the hearing in order for him to present his client.

(78) On January 26, 2000, Judge Jack entered an order striking the continuance motion due to respondent's failure to comply with Local Rule 6(a)(4), which required a statement regarding respondent's conference with opposing counsel.

(79) Mr. Husjord did not appear at the January 26, 2000 hearing as ordered.

(80) Respondent explained that Mr. Husjord was unable to appear because it was very short notice to make arrangements to travel from Norway to Texas.

(81) Judge Jack continued the hearing to February 1, 2000 and ordered respondent to have Mr. Husjord present at the hearing.

(82) Respondent did not have Mr. Husjord present for the scheduled February 1, 2000 hearing. Rather, respondent presented Mr. Asbjorn Hermannsen, a purported corporate representative of Tor Husjord Shipping.

(83) Mr. Hermannsen testified that Mr. Husjord could not appear because it was "very short notice, he is out traveling" and/or "busy in another case." (P-23, p. 3.)

(84) Respondent offered another excuse for Mr. Husjord's absence: that being he had a "terrible accident." (P-23, p. 42.)

(85) Judge Jack continued the hearing until February 4, 2000, and ordered respondent to have Mr. Husjord present at the hearing.

(86) Respondent agreed to have Mr. Husjord present for the hearing on February 4, 2000.

(87) Respondent was late for the February 4, 2000 hearing. He stated he was late because of a Houston traffic jam, and represented that he was late because he was translating a fax from Norway in the matter.

(88) Respondent failed to present Mr. Husjord for the scheduled February 4, 2000 hearing, as ordered.

(89) Under oath, respondent gave three different excuses for Mr. Husjord's failure to appear, stating that Mr. Husjord: had colon cancer at some unknown time, had a clot in a vein in his leg six months ago; had a serious accident on a trip to Singapore approximately two months ago.

(90) Respondent informed the court that he could present Mr. Husjord in four weeks, after Mr. Husjord's health problems improved.

(91) Judge Jack continued the hearing until March 16, 2000, and ordered respondent to have Mr. Husjord present at the March 16, 2000 hearing.

(92) By order dated February 9, 2000, filed on February 10, 2000, Judge Jack scheduled a hearing on March 16, 2000 to assess respondent's pro hac vice status, consider sanctions against respondent, and hear evidence on defendants' attorney's fees and expenses.

(93) On March 15, 2000, respondent filed appellant's opposed motion to continue hearing.

(94) Respondent's motion stated that Mr. Husjord could not appear at the scheduled March 16, 2000 hearing because one of his ships sank near Singapore and he needed to attend the claims negotiation meetings in Norway.

(95) Respondent did not present Mr. Husjord for the March 16, 2000 hearing, as ordered.

(96) On three separate occasions, respondent did not present Mr. Husjord, as ordered by Judge Jack.

(97) Judge Jack found that respondent's excuses for his failure to present his client "changed during any given hearing, and from hearing to hearing." Judge Jack concluded that respondent "misrepresented his client's location, status, and health condition to avoid the necessity for his appearance." (P-17, p. 19.)

(98) Following a hearing on March 16, 2000, Judge Jack imposed monetary sanctions on respondent personally because respondent "never complied with this court's repeated orders to appear with his client and prove his authority to represent the plaintiff." (P-27, P-17, p. 25.)

### Charge V—Failure To Provide Norwegian Translator and Interpreter

(99) On January 26, February 4, and February 9, 2000, Judge Jack ordered respondent to provide a Norwegian interpreter for any hearing at which language would be an issue, and to plead and prove any foreign law upon which he intended to rely.

(100) At the February 1, 2000 hearing, respondent presented the testimony of Mr. Hermannsen, but failed to provide an official Norwegian interpreter for Mr. Hermannsen, as ordered by Judge Jack, other than himself.

(101) Mr. Hermannsen testified he was confused about the court proceeding. Respondent admitted that Mr. Hermannsen asked him the meaning of certain words.

(102) Judge Jack found that "Mr. Hermannsen was obviously unable to understand the proceedings when he appeared and should have had an interpreter." (P-17, p. 22.)

(103) During the hearing on February 4, 2000, respondent presented documents, which he translated from Norwegian, to explain the corporate status of Tor Husjord Shipping.

(104) Respondent failed to provide official translations of these documents as Judge Jack had ordered. Instead, respondent translated the documents himself.

(105) Judge Jack found that respondent's failure to provide official translations and interpreters was a "blatant disregard of the court's order." (P-17, p. 23.)

*Charge VI—Improper Course of Conduct
Before Federal District Court and Unauthorized
Practice After District Court's Termination
of Pro Hac Vice Admission*

(106) On May 30, 1997, respondent filed a motion for admission pro hac vice with the United States District Court for the Southern District of Texas, Brownsville Division.

(107) On June 12, 1997, the United States District Court approved the motion.

(108) On February 9, 2000, Judge Jack issued a rule to show cause to tespondent as to why he should not be sanctioned.

(109) On March 16, 2000, Judge Jack held an evidentiary hearing on the propriety of continuing respondent's pro hac vice status.

(110) Under federal law, pro hac vice status can be revoked for making false representations to the court, pursuing dilatory tactics, and engaging in unethical conduct.

(111) Judge Jack found that respondent's course of conduct demonstrated "his violation of the Federal Rules of Civil Procedure and orders of the court, his disregard for the Rules of Professional Conduct, and his headlong pursuit of a frivolous lawsuit." (P-17.)

(112) By order dated April 28, 2000, Judge Jack vacated the order admitting Erling R. Krosby pro hac vice and revoked his permission to appear in *Tor Husjord Shipping A/S v. Browning.*

(113) Judge Jack reasoned that she was "left with no choice but to sanction Krosby" because "[n]ot being subject to the Disciplinary Rules of the State Bar of Texas frees Krosby to take outrageous positions and make repeated misrepresentations to the court believing he is not subject to punishment." (P-17, p. 25.) Judge Jack imposed monetary sanctions on respondent for his "frivolous, harassing course of conduct," which respondent has failed to pay. (P-17, p. 26.)

(114) On May 4, 2000, respondent filed a pro se motion for change of caption on behalf of Tor Husjord Shipping.

(115) On May 9, 2000, the District Court denied the motion filed on behalf of Tor Husjord.

## III. CONCLUSIONS OF LAW

(1) Pursuant to Pa.R.D.E. 201(a)(1), respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(2) Pursuant to Pennsylvania Rule of Professional Conduct 8.5(a), a lawyer admitted to practice in this jurisdiction is subject to the disciplinary action of this jurisdiction, regardless of where the lawyer's conduct occurs.

(3) Pennsylvania Rule of Professional Conduct 8.5(b) provides that in connection with a proceeding, the rules of conduct to be applied shall be the rules of the jurisdiction in which the court sits, unless the rules of the court provide otherwise. Respondent is subject to the Texas Disciplinary Rules of Professional Conduct.

### Charge I—Repeated Violations of a Tribunal's Rules

(1) T.D.R.P.C. 3.04(c)(1) provides that a lawyer shall not habitually violate an established rule of procedure or of evidence.

(2) Respondent has not violated 3.04(c)(1) as a result of filing three amended complaints in one case, all without leave of court. Respondent's conduct does not rise to the level of habitual violation.

## *Charge II—Erroneous Mandamus Motion*

(1) T.D.R.P.C. 3.01 prohibits a lawyer from bringing a proceeding unless there is a reason for doing so that is not frivolous.

(2) T.D.R.P.C. 3.02 prohibits a lawyer from taking an action that unreasonably increases the costs of the case or that unreasonably delays resolution of the matter.

(3) Respondent filed a motion for issuance of a writ of mandamus in the wrong division of the federal district court. This conduct does not rise to the level of a violation of 3.01 or 3.02.

## *Charge III—Frivolous, Vexatious Complaints*

(1) Respondent violated T.D.R.P.C. 3.01 and 3.02 by filing frivolous and vexatious complaints.

## *Charge IV—Repeatedly Disobeying a Court Order To Produce Client and Making Misrepresentations to a Tribunal*

(1) T.D.R.P.C. 3.02 prohibits a lawyer from taking an action that unreasonably increases the costs of the case or that unreasonably delays resolution of the matter. T.D.R.P.C. 3.04(d) prohibits a lawyer from knowingly disobeying, or advising a client to disobey, a court order except on the client's willingness to accept any sanctions arising from such disobedience.

(2) Respondent did not violate 3.02 and 3.04(d) as relates to the failure of Tor Husjord to appear before Judge Jack.

(3) T.D.R.P.C. 3.03(a)(1) provides that a lawyer shall not knowingly make a false statement of material fact to a tribunal. Respondent violated 3.03(a)(1).

### *Charge V—Failure To Provide Norwegian Translator and Interpreter*

(1) T.D.R.P.C. 3.03(a)(1) provides that a lawyer shall not knowingly make a false statement of material fact to a tribunal. T.D.R.P.C. 3.04(d) prohibits a lawyer from knowingly disobeying, or advising a client to disobey, a court order except on the client's willingness to accept any sanctions arising from such disobedience.

(2) Respondent did not violate 3.03(a)(1) with respect to his failure to provide a Norwegian translator and interpreter.

(3) Respondent violated 3.04(d) as he knowingly disobeyed the tribunal's order to provide the translator and interpreter.

### *Charge VI—Improper Course of Conduct Before Federal District Court and Unauthorized Practice After a District Court's Termination of Pro Hac Vice Admission*

(1) T.D.R.P.C. 5.05(a) prohibits a lawyer from practicing law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction.

(2) After the time that Judge Jack revoked respondent's pro hac vice status, respondent filed a pro se motion for change of caption on behalf of Tor Husjord Shipping.

(3) Respondent violated T.D.R.P.C. 5.05(a).

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with violations of disciplinary rules relating to his misconduct in Bank-

ruptcy Court and the United States District Court for the Southern District of Texas. Petitioner bears the burden of proving ethical misconduct by a preponderance of the evidence that is clear and convincing. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981). The evidence of record demonstrates that petitioner met its burden of proof.

Respondent is a licensed Pennsylvania attorney who apparently resides in Corpus Christi, Texas. On May 30, 1997, the Federal District Court for the Southern District of Texas granted respondent pro hac vice status to participate in the Burton Securities Chapter 11 bankruptcy proceeding. Respondent represented a creditor, Tor Husjord Shipping, in the underlying bankruptcy action. Approximately two years after the bankruptcy court approved the distribution plan and distributed the assets of the bankruptcy estate, respondent filed an adversary complaint in the United States District Court for the Southern District of Texas, which referred the complaint to the bankruptcy court. Without receiving leave of court, respondent subsequently filed three amended complaints against Trustee Harrell Browning, the law firm of Kleberg & Head, and Continental Insurance Company.

On March 19, 1999, the bankruptcy court dismissed respondent's complaints upon defendants' motions for summary judgment. On October 26, 1999, respondent appealed the dismissals to the United States District Court for the Southern District of Texas. Judge Janis Jack held numerous hearings on respondent's pleadings, including three hearings in which respondent's client failed to appear as ordered and a hearing to assess respondent's pro hac vice status. Judge Jack found respondent's pleadings to be frivolous in these matters. Independent ex-

amination of the four complaints by the Hearing Committee and the board likewise confirm that the complaints were vexatious, frivolous and harassing. The complaints contained factual and legal errors. There is no basis to conclude that respondent filed the complaints in good faith. It is apparent that respondent failed to research existing law or investigate underlying facts. Respondent violated T.D.R.P.C. 3.01 and 3.02.

Respondent was repeatedly ordered by the federal district court to provide a Norwegian translator for the court proceedings, and he failed to do so. As a Norwegian national he believed he could conduct this task. He knowingly disobeyed court orders, and this deliberate defiance constitutes a violation of T.D.R.P.C. 3.04(d).

Respondent engaged in the unauthorized practice of law by filing a motion in the federal court after his pro hac vice status was revoked by Judge Jack, who also imposed a substantial monetary sanction upon respondent. Respondent contended that the motion he filed was not the practice of law, but simply a motion to change the style of the pleading. Clearly, the drafting, signing and filing of a pleading in court, no matter how rudimentary, constitutes the practice of law. Respondent violated T.D.R.P.C. 5.05(a).

When measuring the appropriate discipline in an attorney's case, the board is cognizant of the goals of the disciplinary system, which include protecting the public from unfit attorneys and maintaining the integrity of the bar. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986). In determining discipline, the board will consider any aggravating and mitigating factors present in the case.

The aggravating circumstances present in this matter are respondent's conduct in other federal courts where he is not licensed to practice law, his lack of cooperation during the disciplinary hearing, and his failure to appear for the disciplinary hearing. Respondent filed a lawsuit in New York State against Merrill Lynch, notwithstanding the fact that respondent was not licensed to practice in New York. The committee did not examine the underlying merits of the case, but merely evaluated respondent's course of conduct in the Merrill Lynch matter as compared to his conduct in the instant matter. Respondent engaged in very similar actions, filing various amended complaints, motions for contempt and default judgment, and using threats of RICO lawsuits against his adversaries.

Respondent was not cooperative during the course of the disciplinary process. He refused to sign stipulations that the parties and Hearing Committee had painstakingly crafted and that he had agreed to. Respondent filed motions not cognizable under the procedural rules of this forum and then filed objections to the Hearing Committee's refusal to entertain the unauthorized motions. Finally, respondent failed to appear at his disciplinary hearing and provide the committee with the opportunity to assess his demeanor and credibility. Mere days before the scheduled hearing, respondent informed the committee that he would not be attending due to financial hardship.

Respondent did not participate in the disciplinary hearing; however, he did submit a brief to the Hearing Committee and filed a brief on exceptions with the Disciplinary Board. Respondent appeared for the lengthy oral argument. Respondent is a tenacious advocate for his per-

ceived positions. Respondent's arguments were at times incoherent, unfocused, lacked specificity and unfortunately were riddled throughout with accusations and innuendos of wrongdoing by the Office of Disciplinary Counsel and the Hearing Committee, ever suggesting that further lawsuits might be pursued if the disciplinary charges were not dropped. The board's de novo review of the record shows that respondent's accusations are unfounded and furthermore, that respondent's actions violated disciplinary rules.

In determining the discipline, the board is also guided by precedent for the purpose of comparing respondent's conduct against other similar transgressions.

Where a respondent files a single frivolous lawsuit to further the interests of his client, the Supreme Court imposed a public censure. *In re Anonymous No. 85 D.B. 97,* 44 D.&C.4th 299 (1999). In that case, the respondent represented a corporate debtor in a Chapter 11 bankruptcy. With the respondent's knowledge and direction, the respondent's law firm filed a $4.25 million adversary complaint and preliminary injunction against the attorney representing the creditor's committee and his law firm. The board found that the respondent never had any intent to proceed with trial on the merits of the complaint, and filed the unsupported lawsuit as a way of gaining advantage *to intimidate in negotiations.*

Where a respondent files numerous frivolous lawsuits, discipline imposed by the Supreme Court has been either a five-year suspension or disbarment. In *Office of Disciplinary Counsel v. Price,* 557 Pa. 166, 732 A.2d 599 (1999), Mr. Price filed pleadings accusing two district justices and an assistant district attorney of wrongdoings, all of which were denied by the defendants. The

Supreme Court found that Mr. Price did not conduct a reasonably diligent inquiry into the accuracy of the allegations, but instead relied on rumors, innuendo and his own perceptions. Concluding that Mr. Price's allegations were either knowingly false or made without objective reasonable belief that they were true, the court imposed a five-year suspension. In the matter of *In re Anonymous No. 48 D.B. 93,* 29 D.&C.4th 213 (1995), the respondent filed frivolous pleadings, raised groundless defenses, and made numerous misrepresentations in pleadings and in statements to the court in three separate lawsuits. The board found that substantial discipline was warranted as the respondent's conduct evidenced a callous disregard for the administration of justice. The board recommended and the court imposed disbarment.

In the foregoing cases, the board and the Supreme Court recognized the importance of protecting the public and the courts from unfit attorneys. An attorney who persistently and consistently misuses the judicial system as his own personal arena for retaliation should not be permitted the privilege of practicing law. Respondent showed a marked lack of remorse or understanding as to the seriousness of his ongoing behavior. The underlying facts and aggravating factors in this matter emphasize that respondent is unfit to practice law at this time. The public is best served by removing respondent from the practice of law for a period of five years and requiring that he petition for reinstatement.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Erling Rolf

Krosby, be suspended from the practice of law for a period of five years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Sheerer and Gephart dissented and would recommend disbarment.

Board Member Teti recused.

## ORDER

And now, September 30, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated July 12, 2005, the petition for review and responses thereto, it is hereby ordered that Erling Rolf Krosby be and he is suspended from the bar of this Commonwealth for a period of five years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.