908 A.2d 1281

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Eugene Andrew WRONA, Respondent.**

Supreme Court of Pennsylvania.

March 31, 2006.

PER CURIAM.

### *ORDER*

AND NOW, this 29th day of June, 2006, upon consideration of the Report and Recommendations of the Disciplinary Board dated March 31, 2006, Respondent's Petition for Review (with Request for an Extension of Time to File an Answer, Excep-

tions, Objections and New Matters), Respondent's Request to Present Oral Argument and responses thereto, the requests for an extension of time and to present oral argument are denied, and it is hereby

ORDERED that Eugene Andrew Wrona be and he is disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ORDERED that Respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

## REPORT AND RECOMMENDATIONS OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

### TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania ("Board") herewith submits its findings and recommendations to your Honorable Court with respect to the above-captioned Petition for Discipline.

## I. *HISTORY OF PROCEEDINGS*

On August 13, 2004, Office of Disciplinary Counsel filed a Petition for Discipline against Eugene Andrew Wrona, Respondent. The Petition charged Respondent with violating seven Rules of Professional Conduct by making false statements of material fact and false accusations against a judge and engaging in conduct involving dishonesty or misrepresentation and conduct prejudicial to the administration of justice. Respondent filed an Answer to Petition for Discipline on October 21, 2004.

A disciplinary hearing was held on February 8, 2005 and March 11, 2005 before a District II Hearing Committee comprised of Chair James Keath Fetter, Esquire, and Members Terry Dennis Weiler, Esquire, and Cathy A. Wilson, Esquire. Respondent was represented by Gregory A. Hession, Esquire, and acted as co-counsel during the proceedings.

Following the submission of briefs by the parties, the Hearing Committee filed a Report on July 6, 2005, finding that Respondent engaged in professional misconduct and recommending that he be disbarred from the practice of law.

Respondent filed a Brief on Exceptions on August 8, 2005 and requested oral argument.

Petitioner filed a Brief Opposing Exceptions on August 25, 2005.

Oral argument was held on October 11, 2005, before a three member panel of the Disciplinary Board chaired by Laurence H. Brown, Esquire, with Members C. Eugene McLaughlin and Robert E.J. Curran, Esquire.

This matter was adjudicated by the Disciplinary Board at the meeting on November 9, 2005.

## II. *FINDINGS OF FACT*

The Board makes the following findings of fact:

1. Petitioner, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

2. Respondent, Eugene Andrew Wrona, was admitted to practice law in the Commonwealth in 1993. His office is located at 2040 Virginia Street, Allentown PA 18103. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

3. Respondent has no prior history of discipline.

4. Respondent represented the defendant in *Virginia Ternigan v. Farouk Z. Hamoui*, a child support matter in the Court of Common Pleas of Lehigh County.

5. This case was Respondent's first case in court as the primary attorney.

6. On September 24, 1997 Respondent represented his client at a hearing before Judge William Ford, at which Judge Ford found Mr. Hamoui to be in contempt for failure to comply with the existing order for child support.

7. Respondent filed a notice of appeal to the Superior Court of Pennsylvania of Judge Ford's order of September 24, 1997.

8. While the appeal to the Superior Court was pending, Respondent filed a motion with Judge Ford in the lower court to correct the record, contending that statements had been omitted from the transcript of the September 24, 1997 hearing. Judge Ford denied this motion as being without merit.

9. On March 1, 1999, the Superior Court of Pennsylvania affirmed Judge Ford's order of September 24, 1997.

10. On March 4, 1999, Respondent filed a petition to modify the child support order against Mr. Hamoui. Pursuant to Lehigh County procedure in such cases, a domestic relations conference was conducted on June 11, 1999. The conference officer recommended that the child support order be increased. On June 14, 1999 Judge Edward Reibman entered an interim order reflecting the higher child support amount.

11. Respondent then requested a *de novo* hearing on the petition to modify the support order, which came before Judge Alan M. Black.

12. Judge Black conducted the *de novo* hearing on October 20, 1999 to determine whether any unusual circumstances existed that would justify deviation from the Supreme Court's support guidelines. In addition, Respondent raised other legal issues. Judge Black scheduled oral argument to permit both parties to brief and argue the issues raised. Oral argument was conducted before Judge Black on January 12, 2000.

13. By order and opinion dated March 28, 2000, Judge Black affirmed the interim support order entered on June 14,

1999. Judge Black's opinion discusses in detail the factual and legal issues raised by Respondent in the October 20, 1999 hearing and the January 12, 2000 argument.

14. Respondent filed an appeal of Judge Black's March 28, 2000 order to the Superior Court of Pennsylvania. The Superior Court affirmed Judge Black's order. Respondent then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. The petition was denied.

15. While the appeal to the Superior Court was pending, Respondent filed a series of motions to correct the lower court record, alleging that the original audiotapes of hearings and the court proceedings in *Ternigan v. Hamoui* had been altered.

16. Under the system in place in Lehigh County during the years in question court proceedings were recorded on an audiotape operated by a court monitor in the courtroom. At the end of the court proceedings, the court monitor would maintain possession of the audiotapes and would prepare an official transcript of the proceedings from the tapes if required to do so by the Court or any party.

17. One of Respondent's motions to correct the record, filed on May 2, 2000, concerned allegations of inaccuracies in the transcript of a proceeding conducted on June 18, 1999 before Judge Edward Reibman. Judge Reibman conducted a hearing on that motion on June 6, 2000 and dismissed the motion because Respondent failed to produce any evidence in support of the motion.

18. By order dated September 29, 2000, Judge Reibman granted Respondent's petition filed on September 18, 2000 to listen to tape recorded proceedings conducted before Judge Reibman on June 6, 2000.

19. On December 6, 2000 Judge Black conducted a hearing on one of Respondent's motions to correct the record of proceedings conducted before Judge Black, following which Judge Black denied the motion.

20. Respondent was given an opportunity to listen to the original audiotapes of the various court proceedings and to compare those audiotapes to the transcripts. Respondent did so and confirmed that the transcripts conformed with the original audiotapes.

21. By order and opinion dated May 11, 2001, Judge Black denied Respondent's third motion to correct the record relating to the proceedings conducted before Judge Black on October 20, 1999 (the *de novo* hearing on the petition to modify the support order) and January 12, 2000 (the argument concerning the legal and factual issues raised at the time of the October 20, 1999 hearing). Judge Black's opinion reviews in detail the "meager evidence" offered by Respondent in support of the motion and concludes that "[t]here is simply no basis upon which to conclude that the audiotapes were altered in this case." Exhibit P–9.

22. In a separate order dated May 11, 2001, Judge Black granted Respondent's petition requesting copies of the tapes of various court proceedings. Respondent never requested that original audiotapes be made available for analysis; he only requested that he be permitted to listen to the original audiotapes, which he did.

23. By letter dated December 27, 2000, Respondent wrote to Judge James Knoll Gardner, then President Judge of the Court of Common Pleas of Lehigh County and now United States District Judge for the Eastern District of Pennsylvania. In his letter, Exhibit P–13, Respondent made the following accusations against Judge Black and the Court of Common Pleas of Lehigh County:

a. Regarding the testimony of court monitor Diane Snell at a December 6, 2000 hearing on one of Respondent's motions to correct the record, Respondent wrote that Ms. Snell "may have perjured herself" and that "Judge Black has knowledge that her testimony was false and did nothing to correct the error or the record."

b. Respondent also stated in the letter that "criminal misconduct is taking place with the knowledge, or at least a conscious 'look-the-other-way', of officers of the court."

c. Respondent also stated in the letter that Judge Black "is aware that the audiotapes do not contain a complete and accurate record of the proceedings."

24. Respondent's accusations in the letter of December 27, 2000 were false. Judge Black had and has no awareness of any criminal misconduct regarding alteration of audiotapes, and he believes that the audiotapes do contain a complete and accurate record of the court proceedings.

25. On March 2, 2001, Respondent filed on behalf of Mr. Hamoui, a motion to disqualify Judge Black from *Ternigan v. Hamoui*. Respondent submitted his own affidavit in support of this motion. This affidavit was signed by Respondent, dated March 1, 2001, and was signed and sealed by a notary public. The motion to disqualify also contained Respondent's verification of the truth of the statements made in the motion. The motion alleged that Judge Black "has a personal bias or prejudice" against Mr. Hamoui and that Judge Black "has knowledge of criminal misconduct in this matter." Respondent's affidavit in support of the motion to disqualify contained the following accusations against Judge Black:

a. That the outcome of the October 20, 1999 hearing was "predetermined by the court, i.e., the court's decision was 'fixed' prior to hearing evidence,"

b. That Judge Black engaged in "subornation of perjury,"

c. That "under the theory of respondeat superior, the perjurious testimony of [court monitor Diane Snell] may be laid at the feet of Judge Alan M. Black", and

d. That Judge Black engaged in "criminal misconduct."

26. These accusations against Judge Black were false. Judge Black did not himself engage in any alteration of audiotapes, he had no knowledge or awareness of any alteration of audiotapes by anyone else, his decision was not fixed or

predetermined, and he did not engage in any subornation and is not aware of any perjury by anyone from the court system.

27. On March 19, 2001, Respondent filed with the Judicial Conduct Board a supplement to a complaint against Judge Black previously filed by Mr. Hamoui. This statement, dated March 13, 2001, was signed and verified by Respondent.

28. The statement contained the following accusations against Judge Black:

a. That Judge Black engaged "in the process of 'fixing' the outcome of Mr. Hamoui's case"; Respondent defined the term 'fixing' as implying "a conviction, bias, or prejudgment as to the outcome";

b. That Judge Back aided and abetted the commission of a crime;

c. That Judge Black appeared "to have suborned perjury of a staff member"; and

d. That Judge Black engaged in "obstruction of justice in the criminal alteration of audiotapes of official court hearings..."

29. Respondent's accusations against Judge Black in the Judicial Conduct Board filing were false. The Judicial Conduct Board dismissed the complaint against Judge Black.

30. On October 17, 2001, Respondent filed in the Supreme Court of Pennsylvania a petition for allowance of appeal in *Ternigan v. Hamoui*. Respondent alleged therein that Judge Black's court "engages in criminal misconduct."

31. Respondent's accusations against Judge Black in the petition for allowance of appeal were false.

32. Respondent's petition for allowance of appeal also referred to the fact that a formal complaint had been filed with the Judicial Conduct Board against Judge Black.

33. Judge Black did not waive confidentiality with respect to the complaint filed against him, nor did Judge Black give Respondent permission to refer to that complaint.

34. Respondent wrote a letter to the Editor of The Morning Call, the primary newspaper of general circulation in Allentown, concerning the retention of Judges Gardner, Ford and Reibman. This letter was published in The Morning Call on November 2, 2001. Referring to the Lehigh County Court of Common Pleas in general, Respondent's letter stated: "This court systematically deprives litigants of due process and equal protection of law, and harbors criminal misconduct in order to prevent successful appeals by an aggrieved litigant." This accusation was false.

35. By letter dated March 12, 2002, to the Office of the Prothonotary of the Superior Court of Pennsylvania regarding a then-pending appeal in *Ternigan v. Hamoui*, Respondent stated that his client was pursuing disciplinary action against Judge Black before the Judicial Conduct Board.

36. Judge Black did not waive confidentiality with respect to the complaint filed against him with the Judicial Conduct Board, nor did he give Respondent permission to refer to it.

37. Respondent wrote a "press release" and posted it on the internet website of The Center for Children's Justice—Pennsylvania Chapter. It was prepared and posted in late 2001 or early 2002.

38. In this "press release", Respondent made the following accusations against Judge Black:

a. That Judge Black allowed the "criminal alteration of recorded court proceedings".

b. That Judge Black engaged in "subornation of perjury by an officer of the court", and

c. That "the court knowingly harbors...criminal misconduct," referring to the allegation that audiotapes of hearings had been altered.

39. Respondent's accusations against Judge Black in the "press release" were false.

40. The "press release" also referred to the fact that Mr. Hamoui had filed a formal complaint with the Judicial Conduct Board against Judge Black.

41. Judge Black did not waive confidentiality with respect to the JCB complaint, nor did he authorize Respondent to refer to it.

42. By letter dated December 5, 2003, Respondent wrote to the Pennsylvania Attorney General's office. In this letter he stated that Judge Black's alleged conduct was similar to that of priests who molested young boys and that the failure of the District Attorney's Office to investigate his charges was similar to the bishop who undertook to cover up complaints against priests.

43. Respondent also accused Judge Black of "domestic terrorism".

44. On January 6, 2004, Respondent wrote a letter to the Governor of Massachusetts in which he referred to Judge Black as a "despicable person" who was "perpetrating more harm to America than the Al Quida [sic] bombers did on September 11, 2001." (2 N.T. 308)

45. Diane Snell, a court monitor in Lehigh County, testified that she records court proceedings on the court taping system. She then takes possession of the tapes and, when necessary, prepares transcripts directly from the tapes. She was the court monitor for the hearing before Judge Black on October 20, 1999 and for the legal argument on January 12, 2000. She has no knowledge of any criminal activity by Judge Black involving the editing of audiotapes, she herself has not engaged in any such editing, and she is not aware of any editing of the tapes by anyone else. Moreover, Judge Black never urged her to lie, and she never engaged in any perjury. (1 N.T. 189–192).

46. Ms. Snell keeps the tapes in a locked closet in her office. She is the only person who has a key to that closet. (1 N.T. 198).

47. Two other court monitors, Kimberly Brader and Susan Sherry, testified at the disciplinary hearing. They keep the audiotapes of court proceedings locked in cabinets in their respective offices, and they are each the only person with a key to their respective cabinets. (2 N.T. 25, 63).

48. On April 3, 2002, Respondent met with Edward McLarnon, a forensic audio engineer, at Mr. McLarnon's studio in Massachusetts. Respondent provided Mr. McLarnon with a copy of the audiotape of the legal argument conducted before Judge Black on January 12, 2000, for the purpose of having Mr. McLarnon analyze the tape to determine whether it had been edited. The January 12, 2000 hearing was solely for the presentation of argument. No testimony was taken at the hearing.

49. At Mr. McLarnon's request, Respondent identified three areas in the transcript of that day's court proceeding where Respondent believed material was missing. Mr. McLarnon then downloaded the audiotape into his computer and analyzed those three sections of the audiotape.

50. With regard to the first of those sections, Mr. McLarnon concluded that there was a hard edit point, indicating that during the process of making the copy of the original audiotape, the recording process had been stopped, the left and right stereo channels were switched, and the recording process was then resumed. However, Mr. McLarnon only concluded from this that either the playback machine or the record machine was stopped at that point in the copying process. He could not conclude that the original court audiotape had been altered, and therefore could not render an opinion that the original audiotape had been altered.

51. With respect to the second and third edit points identified by Respondent, Mr. McLarnon concluded that there was evidence of electromechanical "spikes" at each of those points, from which he could conclude that either the playback machine or the record machine was stopped at that point during the process of making the copy of the audiotape he was analyzing. Mr. McLarnon would not conclude from his analysis that the original audiotape had been altered.

52. Respondent brought two other audiotapes to Mr. McLarnon's studio that day, but Mr. McLarnon did not analyze either. He only listened to the audiotape from January 12, 2000.

53. Mr. McLarnon did not state an opinion that the original audiotape was altered.

54. Mr. McLarnon's testimony, and the conclusions he presumably stated to Respondent on April 3, 2002, did not provide a reasonable factual basis for a belief that any original court audiotape had been altered.

55. Moreover, because Mr. McLarnon's analysis did not occur until April 3, 2002, and because that analysis involved only the audiotape of the January 12, 2000 argument, Mr. McLarnon's conclusions did not provide a basis for any statements or accusations made by Respondent before April 3, 2002 or for any statements or accusations made by Respondent concerning the audiotapes of any court proceedings other than the proceeding of January 12, 2000.

56. Apart from Mr. McLarnon's analysis, the basis for Respondent's accusations and statements as detailed hereinabove was his own knowledge of what was allegedly said during the various court proceedings, "contemporaneous notes", and the alleged corroboration of witnesses, specifically his brother, Reginald Wrona, and his client, Mr. Hamoui.

57. Respondent did not offer into evidence any notes he took during any of the court proceedings in question. The only documents he offered were notes he prepared at an unspecified time after some of the court proceedings which purport to be his recollection of omissions from the transcript.

58. The alleged corroboration by Reginald Wrona and Mr. Hamoui fails to provide a reasonable factual basis for Respondent's accusations.

59. Respondent contacted representatives of the Pennsylvania Attorney General's office, the U.S. Attorney's office and the Lehigh County District Attorney's office to complain about the alleged alteration of court audiotapes and to initiate an investigation by those offices into his allegations.

60. None conducted an investigation.

61. Respondent claims several motivations exist for a court sponsored alteration of audiotapes, including a subsidy of ten

percent of child support collections that the federal government pays to states (2 NT 321) and an intent to prevent successful appeals of support orders (2 NT 322). Respondent acknowledges that even if such subsidies are paid to Pennsylvania, he does not know where these subsidies go. Moreover, the material Respondent claims was omitted from the record of the various court proceedings bears no relationship to the alleged motivation for the alteration and provides no credible support for Respondent's allegations.

62. Respondent believes there is no reason for him to withdraw any of his accusations or offer any apology.

64. Respondent has not expressed regret or remorse for any statements he has made.

## III.  CONCLUSIONS OF LAW

By his conduct as set forth above, Respondent violated the following Rules of Professional Conduct:

1. RPC 3.3(a)(1)—A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

2. RPC 8.2(b)—A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officers.

3. RPC 8.4(a)—It is professional misconduct for a lawyer to violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another.

4. RPC 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV.  DISCUSSION

This matter is before the Disciplinary Board for consideration of the Petition for Discipline filed against Respondent charging him with professional misconduct arising from his actions during litigation in which Respondent represented the defendant in a child support matter in the Court of Common Pleas of Lehigh County. Respondent came to believe that original audiotapes of court proceedings in the case had been

altered to omit statements or testimony and that the transcripts of those proceedings, prepared from the audiotapes, therefore did not accurately reflect all that had been said in the course of those proceedings. After filing unsuccessful motions to "correct the record" to have the allegedly omitted statements added to the record, Respondent began in late 2000 to accuse the presiding judge in the support case, Alan M. Black, and other court personnel in the Court of Common Pleas of Lehigh County of involvement or complicity in the criminal alteration of audiotapes of court proceedings. These accusations were made in a succession of letters, pleadings, court filings, affidavits and internet postings. These accusations continued to the time of Respondent's filings and testimony in this disciplinary proceeding.

Specifically, Respondent is charged with violations of Rules of Professional Conduct 3.3(a)(1), 4.1(a), 8.2(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d). Petitioner has the burden of proving, by a preponderance of the evidence that is clear and satisfactory, that Respondent's actions constitute professional misconduct. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986). In this situation, Petitioner may meet the burden of proof by presenting documentary evidence or testimony from the person at whom the accusations were aimed that the statements were false. *Office of Disciplinary Counsel v. Price*, 557 Pa. 166, 732 A.2d 599 (1999). The burden then shifts to Respondent to establish that the accusations are true or that following a reasonable diligent inquiry, he formed an objective reasonable belief that the accusations were true. *Id.* at 604. A determination of misconduct hinges upon whether Respondent acted recklessly or with the support of a reasonable factual basis. Recklessness is shown by the "deliberate closing of one's eyes to the facts that one had a duty to see or stating as fact things of which one was ignorant." *Office of Disciplinary Counsel v. Anonymous Attorney A*, 552 Pa. 223, 714 A.2d 402 (1998).

Petitioner met its burden by proving that Respondent made the accusations he is charged with making and by presenting the testimony of Judge Black, attorney Susan Maurer, and court monitor Diane Snell that not one of them was involved in

any manner with any alteration of court audiotapes and that none of them was aware of any such alteration by any person. The testimony of Judge Black and Ms. Snell also established that Ms. Snell did not testify falsely and that Judge Black never suggested that she do so. The testimony of Judge Black established that he never waived confidentiality with respect to the complaint made against him with the Judicial Conduct Board and that he never gave Respondent permission to refer to that complaint.

The burden of proof shifted to Respondent, who repeatedly testified that he believed and still believes that the accusations are true. The evidence Respondent presented utterly failed to establish this contention. His primary evidence rested upon the testimony of his expert witness, audio engineer Edward McLarnon. Mr. McLarnon analyzed a copy of the tape of the January 12, 2000 argument and could only say that he was directed by Respondent to three points on the copy where Respondent believed material was missing and at those three spots the process of making the copy from the original audiotape was interrupted; he did not conclude and did not testify that the original audiotape was altered. Mr. McLarnon could only opine that at those spots the tape recorder was stopped and restarted.[1] Respondent did not offer any contemporaneous notes made at the time of the court proceedings in question. The testimony of Respondent's brother and his client at the hearing was not probative. Based on the totality of the evidence presented, the Board concludes that the accusations made by Respondent were false, and were made without the support of an objective, reasonable factual basis. Respondent made the accusations with reckless disregard of the truth or falsity of the accusations. Respondent had no objective facts upon which he could reasonably conclude that

1. This testimony was refuted by James McGee, an expert retained by the Lehigh County Court System and presented by the Office of Disciplinary Counsel. Mr. McGee testified that Mr. McLarnon reached erroneous conclusions because he was only provided with and examined a copy of the original audiotape. Mr. McGee, who examined the original audiotape, found no interruptions on the January 12, 2000 audiotape at the three spots to which Respondent directed Mr. McLarnon's attention.

his belief was true. Respondent routinely and repeatedly acted recklessly by stating as facts things of which he was ignorant. Respondent has not presented any credible evidence of any wrongdoing by Judge Black to support any objectively held reasonable belief about the judge's involvement in any audiotape alteration.

For these reasons, the Board concludes that Respondent violated Rules of Professional Conduct 3.3(a)(1), 8.2(b), 8.4(a), 8.4(c), and 8.4(d). The Board further concludes that Respondent did not violate 8.4(b) and 4.1(a). RPC 8.4(b) makes it professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer. Petitioner based this charge upon the contention that Respondent committed perjury or unsworn falsification to authorities pursuant to 18 Pa.C.S. §§ 4902 and 4904. Each of those sections includes as an element of the crime that the person made a false statement which he did not believe to be true. Petitioner did not prove this element of the crime and thus did not prove a violation of 8.4(b). RPC 4.1(a) states that in the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person. Respondent published his accusations on the Internet, in a letter to the editor of the local newspaper, and in a letter to Judge Gardner. These accusations were based on his personal impressions and opinions that wrongdoing occurred in his client's case. These accusations were not false statements of material facts concerning the representation of his client. A material fact is one which is essential to the case and without which it could not be supported. Black's Law Dictionary 881 (5th ed.1979).

The record supports the finding of five violations of the Rules of Professional Conduct. This matter is ripe for the determination of discipline. It is appropriate to consider any aggravating or mitigating circumstances present. At the hearing Respondent remained intractable in his position. He displayed a complete lack of remorse or regret concerning his actions and appeared ignorant of the severity of his misconduct and its ill-effect on the legal system. What is sadly ironic is that the *Ternigan v. Hamoui* matter was Respondent's very

first court case handled on his own. He has no background of steady competent legal work to help mitigate the severity of his unwarranted behavior. The content of Respondent's accusations, their repetition and wide audience render Respondent's behavior extremely egregious.

The guiding decisions on the appropriate sanction are *Office of Disciplinary Counsel v. Price,* 732 A.2d 599 (1999) and *Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441 (2000). Each of these cases involved the making of false accusations against judges or other judicial officers, and in each case the Supreme Court determined that a five year suspension was appropriate. Consistent with the position of Petitioner and the Hearing Committee in this matter, the Board is persuaded that the totality of the facts and circumstances in this matter warrant more severe discipline than that imposed in the cited cases. More than in any other case of this nature, this Respondent is truly unfit to practice law. He exhibited no awareness of his responsibilities and obligations to the court. He was prepared to fight his case in any way possible, including making false and injurious accusations against a judge in a persistent manner through a number of years and to a variety of audiences. This "zealous" representation goes far beyond that contemplated by the ethical rules governing this profession. Respondent has not demonstrated that he possesses the qualities and character necessary to practice law in this Commonwealth. Despite his own opinion of his actions, the record is clear that Respondent did not serve his client well. It is the Board's opinion that the general public is well-served to have Respondent removed from the roll of active attorneys. The Board recommends that Respondent be disbarred.

## V. *RECOMMENDATION*

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the Respondent, Eugene Andrew Wrona, be disbarred.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the Respondent.

Respectfully submitted,

THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

By: _____

Laurence H. Brown, Board Member

March 31, 2006

Board Member McLaughlin did not participate in the decision of this matter.