**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2704
_____

STEPHEN MCCARTHY, P.A.,
                                        Petitioner

v.

UNITED STATES DRUG ENFORCEMENT
ADMINISTRATION
_____

On Petition for Review of an
Order of the Drug Enforcement Administration
(Agency No. 23-40)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 20, 2025
_____

Before:  PHIPPS, CHUNG, and ROTH, <u>Circuit Judges</u>

(Filed: March 27, 2026)

———————————

OPINION OF THE COURT

———————————

CHUNG, Circuit Judge.

An attorney submitted a brief to this Court which contained legal authority summarized and provided to him by a non-attorney. The attorney failed to verify the legal authority in any way. Unfortunately, the research contained myriad inaccuracies. Even after learning of the inaccuracies, the attorney neither read nor verified the existence of the authorities and, nonetheless, submitted another brief casting the mistakes as "immaterial." Reply Br. 14. After submitting both briefs, the attorney confirmed his suspicion that the erroneous citations were generated by AI. Even so, he still neither read nor verified the existence of the cited authorities. To the contrary, the attorney made no attempt to remediate the situation until we ordered him to provide copies of the cited authorities and explain if or how he verified their accuracy. We conclude that this course of conduct violated this Court's rules and will impose sanctions.

I.     BACKGROUND

Daniel A. Pallen, Esq. ("Attorney") represented the Appellant in McCarthy v. United States Drug Enforcement Administration, No. 24-2704. He is an attorney admitted to the bar of this Court and the Pennsylvania bar. See McCarthy v. U.S. Drug Enforcement Admin., No. 24-2704 2025 WL 2028399 (3d Cir. July 21, 2025). On September 30, 2024, Attorney filed the Opening Brief in that case. To support his argument that the Drug Enforcement Agency ("DEA") acted

2

inconsistently with its prior practice, he provided summaries of eight DEA adjudications. We now know that in including and preparing these summaries, Attorney relied on case overviews generated by AI and provided to him by a non-attorney. Attorney "modified some of the [provided] language for ease of reading and then simply incorporated the same into the brief" without verifying the existence or accuracy of the citations. He then submitted the brief under his signature as an officer of the court. The summaries for seven of the authorities were riddled with factual and legal inaccuracies, and one of the authorities simply did not exist. In its Response Brief, the Government catalogued these failures. Despite reading the response, Attorney did not check the citations.

Attorney then began preparing the Reply Brief. He still did not check the citations, even while suspecting that AI had been used by the non-attorney in providing suggestions to Attorney for both the Opening Brief and the Reply Brief.[1] Attorney filed the Reply Brief on February 6, 2025. In that brief and, again, having never checked the citations, he stated that the erroneous citations were part of "a good faith effort to chronicle Agency disparities, [and that there were] some immaterial misstatements about the cited cases' tangential details." Reply Br. 14. He further characterized the

---

[1] At the beginning of the show cause hearing, we reminded Attorney of his obligation of confidentiality to his client before he spoke or answered questions. See Pennsylvania Rules of Professional Conduct 1.6. In coming to our decision here, we need not rely on any communications he had with his client and will not refer to them.

3

inaccuracies within the summaries and the non-existence of a cited adjudication as "minor discrepancies." Id.

Attorney states that "[i]t was not until a few days later in mid-February 2025" that he "conclusively deduced that the citations and case descriptions made in the Opening Brief" had been generated by AI. ECF 56, Corrected Response to Order to Show Cause Dated July 21, 2025 ("Resp. to OSC") 3. Upon realizing this, Attorney took no action whatsoever.

On May 15, 2025, this Court ordered Attorney to provide copies of the eight adjudications summarized in the Opening Brief. It was at this point that Attorney finally checked the authorities, and discovered for himself the summaries' inaccuracies and the fact that one cited adjudication did not exist. In response to our order, Attorney disclosed, for the first time, that the seven summaries were inaccurate and that one authority was hallucinated by AI. He further admitted that he first suspected AI had been used in "early February 2025," and that he confirmed that AI had been used to generate the underlying work product for the erroneous summaries in "mid-February 2025." Resp. to Text Order 4.

We then ordered Attorney to show cause why he should not be sanctioned pursuant to the Third Circuit Rules of Attorney Disciplinary Enforcement ("Circuit Disciplinary Rules"). In response, Attorney conceded that his conduct violated our Circuit Disciplinary Rules and requested a hearing, which was held on August 11, 2025.

II.    DISCUSSION

    A.    Violations of Disciplinary Rule 2.1

4

Pursuant to Third Circuit Disciplinary Rule 2.1(d), "[a] member of the bar of this Court may be disciplined by this Court as a result of … conduct that violates the Rules of … any state, territory, or commonwealth of the United States to which the respondent is subject." Disciplinary Rule 2.1. Attorney is subject to the Pennsylvania Rules of Professional Conduct ("Pa. R.P.C.").

       1.      Pa. R.P.C. 3.3, Duty of Candor to the Court

An attorney violates Pa. R.P.C. 3.3 by "knowingly[] … mak[ing] a false statement of material fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Pa. R.P.C. 3.3(a)(1). Attorney's conduct may have violated Pa. R.P.C. 3.3(a) in various ways.

First, in his Opening Brief, Attorney advanced a meritless legal argument in that the argument relied upon non-existent authority or was wholly unsupported by the adjudications cited. Specifically, the adjudications were misrepresented to, among other things, make it appear that the DEA imposed lesser sanctions than those actually imposed in those adjudications. This conduct may have violated Pa. R.P.C. 3.3(a) because Attorney misrepresented the facts and conclusions of the DEA adjudications. But Pa. R.P.C. 3.3 is violated only when an attorney "knowingly" makes a false statement. Pa. R.P.C. 3.3(a)(1). While Attorney mispresented the legal authorities he cited, it is debatable whether he knew

5

such statements were false as he failed to read the cases.[2]

Second, when alerted to these errors in his Opening Brief, and despite his suspicions that the citations had been generated by AI, Attorney did not correct those statements and submitted *additional* mischaracterizations of the citations in his Reply Brief. Reply Br. 14 (stating summaries were "a good faith effort to chronicle Agency disparities, [and that there were] some immaterial misstatements about the cited cases' tangential details."). Attorney thus may have violated Pa.

---

[2] Pennsylvania law suggests that reckless conduct may violate Pa. R.P.C. 3.3(a) and Attorney's continued failure to verify the citations and subsequent affirmative mischaracterizations was plausibly reckless in view of his knowledge that a non-attorney provided the content to him and his suspicion that such content had been AI-generated. See Off. of Disciplinary Couns. v. Wrona, 908 A.2d 1281, 1288 (Pa. 2006) (finding, among other rules, that Pa. R.P.C. 3.3 was violated when attorney acted recklessly); id. (appearing to adopt reckless standard without specifically addressing *mens rea* required). Because the text of Pa. R.P.C. specifies knowing conduct, and because the Pennsylvania Supreme Court has not spoken to specifically say otherwise, we will not adopt a reckless standard here.

Our dissenting colleague highlights the applicability of Pa. R.P.C. 3.3(a) Explanatory Comment 3 (Representations of a Lawyer). We read that comment to be concerned with a lawyer's statements of fact and we read Explanatory Comment 4 (Legal Argument) to be concerned with statements of law. See also Off. of Disciplinary Couns. v. Price, 732 A.2d 599, 603-04 (Pa. 1999) (analyzing Comment 3 in the context of a lawyer's statements of material fact).

R.P.C. 3.3(a)(1) when he failed to correct false statements made to the Court and when he asserted in his Reply Brief that the citations were "immaterial misstatements" and "minor discrepancies" about "tangential details." Reply Br. 14. In fact, these errors were not immaterial. The summaries provided the primary support for Attorney's argument that the DEA's actions were arbitrary and capricious. As Attorney explained it, the summaries showed that the DEA "deviat[ed] from its prior practice" without justification. Opening Br. 35. This, according to Attorney, was an independently sufficient reason to vacate the DEA's decision. Opening Br. 25–26. Nonetheless, Pa. R.P.C. 3.3 may not be implicated here. Given that Attorney did not act with the normal diligence expected of an attorney, it is again debatable whether he knowingly failed to correct the false statements of fact and law contained in his Opening Brief. It is similarly debatable whether he made the mischaracterizations of his previous errors knowing they were false.

Finally, Attorney may also have violated Pa. R.P.C. 3.3(a) because he lacked any basis to state that the erroneous authorities in the Opening Brief were cited in "good faith." We cannot conclude that Attorney did not know that the concept of "good faith" is inconsistent with presenting legal authority that he did not even verify existed. It is therefore likely that in submitting this assertion to the Court, Attorney knowingly made a false statement of fact to the tribunal. To violate Pa. R.P.C. 3.3(a)(1), however, the false statement must be one of a *material* fact. Attorney asserted his good faith when replying to an argument made by the DEA. In responding to that argument, Attorney's good faith was immaterial.

On the whole, while we are deeply troubled by Attorney's cavalier stance towards his various submissions to this Court, we do not find that he violated Pa. R.P.C. 3.3(a)(1).

> 2. Pa. R.P.C. 1.1, Duty to Provide Competent Representation to a Client

We caution, though, that Attorney's continued dereliction of minimal diligence implicates another Pa. R.P.C., namely Pa. R.P.C. 1.1. This rule requires an attorney to "provide competent representation to a client" and specifies that "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Pa. R.P.C. 1.1. We conclude that Attorney's conduct violated R.P.C. 1.1 in that he failed to exercise the "thoroughness [] necessary for the representation" in this matter. This violation is a basis for discipline under Circuit Disciplinary Rules 2.1(d).

In the first instance, competent representation required that Attorney be so thorough as to check all the citations in his Opening Brief before signing and filing it.[3] This is especially

---

[3] In examining substantially identical rules, courts have routinely found that the failure to verify the veracity and authenticity of citations violates an attorney's duty to provide thorough and competent representation. See In re Martin, 670 B.R. 636, 648 (Bankr. N.D. Ill. 2025) (pursuant to ABA Model Rule 1.1 attorneys have an "ethical obligations … to review whatever cases they cite"); Benjamin v. Costco Wholesale Corp., 779 F. Supp. 3d 341, 349 (E.D.N.Y. 2025) (plaintiff's attorney violated New York Rules of Professional Conduct

the case given that the legal authorities and their substance were provided to him by a non-attorney.[4]  He chose not to check the cites, however.  Later, when he was alerted to the inaccuracies in this brief, competent representation required

Rule 1.1 where she did not review AI generated research); Dehghani v. Castro, 782 F. Supp. 3d 1051, 1060 (D.N.M. 2025) ("[a] lawyer's failure to verify generative AI outputs can implicate" Texas Rules of Professional Conduct Rule 1.1); Puerto Rico Soccer League NFP, Corp. v. Federacion Puertorriquena de Futbol, No. CV 23-1203 (RAM), 2025 WL 1080732, *3 (D.P.R. Apr. 10, 2025) (plaintiffs' attorneys violated ABA Model Rule 1.1 where they provided a "litany of inaccurate information" to the court and provided citations to caselaw that were either incorrect or did not exist); Robert Thackston v. Daniel P. Driscoll, Secretary of the Army, No. SA-24-CV-00276-FB-ESC, 2025 WL 2715267, *5 (W.D. Tex. Aug. 28, 2025) (same); Hall v. Acad. Charter Sch., No. 2:24-CV-08630-JMW, 2025 WL 2256653, *1 (E.D.N.Y. Aug. 7, 2025) (same); Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr., No. 1:24-CV-01918-JRS-MJD, 2025 WL 2502308, *5 (S.D. Ind. Sept. 2, 2025) (same).

[4]     Cf. Pa. R.P.C. 5.3 "Responsibilities Regarding Nonlawyer Assistance," cmt. 3 (advising that "a lawyer must make reasonable efforts to ensure that the services [of a nonlawyer] are provided in a manner that is compatible with the lawyer's professional obligations.  The extent of this obligation will depend upon the circumstances, including the education, experience and reputation of the nonlawyer; [and] the nature of the services involved" and referencing Pa. R.P.C. 1.1, among other Pa. R.P.C.s.)

that he be so thorough as to check the authorities in his Opening Brief (and Pa. R.P.C. 3.3 would then have required he submit appropriate corrections to the Court). He again chose not to do so. Unfortunately, Attorney's lack of diligence continued when he stated in his Reply Brief, wholly without basis, that his citations to these authorities were "immaterial misstatements" and "minor discrepancies" about "tangential details." Reply Br. 14. Attorney's myriad failures led to all of the problems highlighted above. In light of this lack of thoroughness, we find that Attorney violated Pa R.P.C. 1.1 and Circuit Disciplinary Rule 2.1(d).[5]

### B. Sanctions

A panel of this Court "may impose any sanction other than suspension or disbarment."[6] Circuit Disciplinary Rule 4.1. "Discipline may consist of … monetary sanction, removal from the roster of attorneys eligible for appointment as Court-appointed counsel, reprimand, or any other sanction that the

---

[5] This Court also alerted Attorney that it would consider whether his conduct violated Circuit Disciplinary Rule 2.1(e) (providing for discipline based upon conduct "unbecoming a member of the bar of this Court") and the hearing in this matter touched upon whether Attorney's conduct implicated Local Appellate Rules 28.4 and 46.4 (requiring signature), as informed by Fed. R. Civ. P. 11. We do not reach that issue here as we find Pa. R.P.C. 1.1 and Circuit Disciplinary Rule 2.1(d) adequately address Attorney's conduct.

[6] Suspension or disbarment may be imposed by this Court's Standing Committee on Attorney Discipline. See Circuit Disciplinary Rules 4.1, 4.2.

Court or a panel thereof may deem appropriate." Circuit Disciplinary Rule 3.1.

Here, Attorney has wasted the time and resources of this Court and the Government due to his failure to verify, at multiple points in time, authorities that he submitted to this Court; his doubling-down on that conduct by submitting *yet another brief* in which he characterized his complete lack of legal research as a "good faith effort;" his characterization of the misrepresentations as "immaterial" and related to "tangential details," although having never read the authorities and having no basis to make such assertions, Reply Br. 14; and his failure to timely verify and report his knowledge of inaccuracies.

Moreover, Attorney has harmed his credibility with this Court. As Attorney signed his brief and submitted it as an officer of the Court, this Court initially credited Attorney with earnest, but mistaken, efforts in offering legal authority to this Court. It was highly disappointing to learn that Attorney's status as an officer of the Court did not prevent him from blindly submitting erroneous authority and to learn that this Court's confidence in him was misplaced.

On one hand, Attorney's conduct is somewhat mitigated by the actions he took after our show-cause order. Attorney has displayed sincere contrition. He has been forthcoming and admitted his many failures to this Court without minimizing his conduct. Attorney also states that he has taken corrective measures to prevent a similar incident from occurring in the future. On the other hand, the mitigating force of Attorney's remedial conduct is lessened by the fact that he only made such efforts *after* we issued the show cause order. That he was not

11

already verifying the accuracy of all citations in his briefs is itself concerning.

In considering sanctions, we also find mitigating the fact that this Court has not yet addressed the failure of attorneys to use AI with appropriate guardrails.[7]  While Attorney had ample reason to question the reliability of the authorities he submitted, and arguably had reason to know the pitfalls of AI,[8] this Court has not yet had the opportunity to speak on the issue and emphasize that, when using AI, litigants must still strictly adhere to all rules of professional conduct.  Moreover, we are mindful that in issuing the show cause order, this Court did not

---

[7]  With the rapid advancement of this technology, there have been missteps by a variety of participants in the legal system, from junior members of the bar to judges themselves.  It is incumbent upon all participants to adhere to professional standards governing their work.  See, e.g., Jud. Conf. Comm. on Codes of Conduct, Guidance for Ethical Use of AI in the Judiciary, Section F "Accountability, accuracy, and the need for verification" (February 2, 2026) (citing Code of Conduct, Canon 3B and Judiciary's Interim Guidance, III(A)(4)).

[8]  Two years ago, an attorney submitting fake cases generated by AI was described as "unprecedented."  Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023).  Unfortunately, that is no longer the case.  See, e.g., Johnson v. Dunn, --- F. Supp. 3d ---, No. 2:21-cv-1701, 2025 WL 2086116, at *11 (N.D. Ala. July 23, 2025) (compiling cases involving fabricated authorities).

ask Attorney to address Pa. R.P.C. 1.1.[9]  While our Circuit Disciplinary Rules do not require us to notify an attorney of each rule that may have been violated, *see* Circuit Disciplinary Rule 4.1 (requiring only that an attorney be notified of "the alleged conduct which may justify the imposition of discipline"), we nonetheless find Attorney's lack of opportunity to address this rule to be a mitigating factor in deciding what discipline to impose.

Considering the above, the Court will impose the sanction of a reprimand.  Pursuant to our Disciplinary Rules, "the Clerk will notify … all other courts before whom [Attorney] is admitted to practice and the National Disciplinary Data Bank" of this discipline and provide them with a copy of the opinion imposing this discipline.  Circuit Disciplinary Rule 12.  Had this not been our first opportunity to address the use of AI, and had we given notice that we would consider whether Attorney's conduct violated Pa. R.P.C. 1.1, it is likely that monetary sanctions would have been imposed here.  As this precedent has now been set, the first mitigating factor will not apply in the future and violators may well face any of the sanctions available per Circuit Disciplinary Rules 4.1-4.2.

Our decision is neither a critique nor a comment upon Attorney's reliance on others in conducting research, nor the

---

[9]  When this Court issued the Order to Show Cause, it was under the misimpression that, when Attorney confirmed that AI had been used to draft portions of the Opening Brief, he also confirmed that the summaries were incorrect and that one authority did not exist.  Accordingly, the Court's focus was Attorney's duty of candor to the Court in not disclosing those errors.

use of AI generally. With proper supervision and vetting, both may be helpful to an attorney. Nor are perfect summaries and citations needed to avoid sanctions. Mistakes do happen. Our decision to impose sanctions is due to Attorney's overall conduct over the course of months. Had he checked the citations upon receiving the Government's brief and then informed us that the citations were inaccurate, our decision today would be different. Had he taken reasonable efforts to ensure the reliability of his Opening Brief in the first place, we would not be here at all.

III.    CONCLUSION

For the foregoing reasons, Mr. Pallen will be sanctioned accordingly.

McCarthy v. U.S. Drug Enforcement Administration

No. 24-2704

_____

ROTH, *Circuit Judge*, concurring in part and dissenting in part.

Although I agree with my colleagues that Daniel Pallen's (Attorney) violations of Pa. R.P.C. 1.1 and Circuit Disciplinary Rule 2.1(d) warrant sanctions, I write separately because I would have imposed sanctions more severe than the Majority deems appropriate. In my view, the Majority incorrectly attaches an inapplicable standard of culpability to Pa. R.P.C. 3.3(a)(1)—a rule which Attorney violated on at least two occasions. The sanctionable conduct is not merely Attorney's filing of a brief with incorrect and hallucinated citations, but also his subsequent actions, inactions, and lack of candor that continued until he was eventually held accountable by this Court.

I. **Attorney Violated Pa. R.P.C. 3.3(a)(1) Because He Falsely Asserted Legal Arguments Without a Belief Based on a Reasonably Diligent Inquiry**

The Majority hesitates to conclude that Attorney violated Pa. R.P.C. 3.3(a)(1) because they are unsure whether he knew the AI-generated case summaries and analyses asserted in his Opening Brief were false. I agree with the Majority that a knowing standard of culpability would apply to

1

any *factual assertions* within the Opening Brief.[1]   However, the Majority need only read the comments to Pa. R.P.C. 3.3 to see that the Pennsylvania Supreme Court distinguishes *facts* relevant to a client's case—for which a knowingly standard of culpability would apply—from *legal argument* in support thereof:

> An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. Compare Rule 3.1**. However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.**[2]

Within the same Rules of Professional Conduct, the Pennsylvania Supreme Court recognizes that analysis of precedent is a legal skill covered under an attorney's duty of competence.[3]   While Attorney was not required to have first-

---

[1] *See* Pa. R.P.C. 3.3(a)(1) ("A lawyer shall not *knowingly* make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]") (emphasis added).
[2] Pa. R.P.C. 3.3 cmt. 3 (emphasis added).
[3] *See* Pa. R.P.C. 1.1 cmt. 2.

2

hand knowledge of every facet of his client's factual history, the Pennsylvania Rules of Professional Conduct prohibited him from blindly accepting his client's legal research as accurate. If Attorney wanted to demonstrate the DEA's "lack of reasoned decision-making" and use prior caselaw to explain that the agency "acted arbitrarily and capriciously," his reasoning must have been purported on his own knowledge.[4]

The relevant analysis under Pa. R.P.C. 3.3(a) is not whether Attorney knew he was including miscited and hallucinated caselaw in his Opening Brief. Rather, the question is whether Attorney knew his analyses of the cases were true, or *at minimum* whether he believed those analyses were true based on a reasonably diligent inquiry.[5] Yet Attorney never conducted any inquiry whatsoever. Instead, he incorporated his client's AI-generated legal research into the Opening Brief without checking the veracity (or even existence) of those cases. Such conduct squarely violates Rule 3.3(a)(1).

## II. Attorney's Actions After Receiving Notice of His Mistakes in the Opening Brief Are More Egregious Than Mere Mistakes

Had Attorney's violations been limited to incorrect citations, I would be more inclined to agree with my colleagues

---

[4] Opening Br. 35.

[5] *See Off. Of Disciplinary Couns. v. Price*, 732 A.2d 599, 605 (Pa. 1999) (holding that an attorney violated Pa. R.P.C. 3.3(a)(1) because he "relied on rumors, innuendo and his own perceptions" instead of "conducting a reasonably diligent inquiry into the accuracy of his statements.").

about the severity of the sanctions imposed. I am troubled, however, by Attorney's conduct after the government spent four pages of its Response Brief discussing the errors for each of the eight incorrect citations. This would have been the opportune time for Attorney to recognize and remedy his mistakes.

Instead of acknowledging the errors made in his Opening Brief, Attorney put his nose in the air and accused the government of "disregard[ing] the forest for the trees."[6] A defense of mischaracterized caselaw, like an analysis of precedent, is a legal skill. When Attorney dismissed his erroneous caselaw analyses as "some immaterial misstatements about the cited cases' tangential details," he was required under Pa. R.P.C. 3.3(a) to know that his statements were true, or believe them to be true after conducting a reasonably diligent inquiry.[7] It is difficult to understand how Attorney could defend the truth of his statements when he never bothered to read the cases, even after filing his Reply Brief. Accordingly, Attorney's statements in defense of his miscited and hallucinated caselaw in his Reply Brief constitute additional violations of Pa. R.P.C. 3.3(a).

Yes, mistakes do happen.[8] Yet even if we call Attorney's initial lapse of judgment a mistake, we should not say the same about Attorney's actions after the government put him on notice in its Response Brief. Attorney confirmed in early February 2025—shortly after filing his Reply Brief on February 6, 2025—that his client had used AI to generate the

---

[6] Reply Br. 14.
[7] Reply Br. 14.
[8] *See* Maj. Op. 12.

4

research, including the erroneous caselaw in his Opening Brief. But Attorney chose to sit on his hands. The Majority adequately described why Attorney's conduct violated Pa. R.P.C. 1.1 and Circuit Disciplinary Rule 2.1(d). However, attorneys practicing before this Court should not be permitted to stick their heads in the sand and pray that ignorance will preclude them from upholding their professional responsibilities.

### III. This Court Does Not Need to Warn Attorneys to Use Artificial Intelligence Responsibly

Finally, I write to comment on the Majority's hesitation to impose monetary sanctions because we have not yet addressed the use of AI in a precedential opinion.[9] We need not explicitly forewarn against improper AI use when it falls within the strictures on legal argument of Pa. R.P.C. 3.3. Moreover, we can take notice of the numerous courts across the country that have already addressed attorneys' obligation to take ownership over their work product. We have seen federal appellate courts admonish attorneys for filing briefs with hallucinated cases.[10] We have seen federal district courts—including within this Circuit—discipline attorneys for not checking work provided to them by clients.[11] We have seen state courts sanction lawyers for blindly relying on

---

[9] *Supra* Maj. Op. 12.

[10] *See Park v. Kim*, 91 F.4th 610, 613–15 (2d Cir. 2024); *Grant v. City of Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2004).

[11] *See, e.g., Bevins v. Colgate-Palmolive Co.*, No. 25-cv-576, 2025 WL 1085695, at *7 (E.D. Pa. Apr. 10, 2025); *Bunce v. Visual Tech. Innovations, Inc.*, No. 23-cv-1740, 2025 WL 662398, at *3–4 (E.D. Pa. Feb. 27, 2025).

generative-AI to conduct caselaw research.[12]  What's more, such lapses in judgment are no longer confined to the legal community, as publications by national media broadcast these errors to the public.[13]

Although Attorney did not ask for leniency on this ground, the Majority appears to adopt the reasoning of an attorney who filed briefing with fake caselaw hallucinated by an AI-program before the United States Court of Appeals for the Second Circuit.  In *Park v. Kim*, the attorney argued that she should not be sanctioned because the court had not yet issued guidance advising lawyers to exercise caution when

---

[12] *See, e.g., Ader v. Ader*, 87 Misc.3d 1213(A), 2025 WL 2831332, at *3–4 (N.Y. Sup. Ct. Oct. 1, 2025); *Smith v. Farwell*, No. 2282CV01197, 2024 WL 4002576, at *4–5, *7 (Mass. Dist. Ct. Feb. 15, 2024).

[13] *See, e.g.,* Larry Neumeister, *Lawyers submitted bogus case law created by ChatGPT. A judge fined them $5,000,* ASSOCIATED PRESS (June 22, 2023), https://apnews.com/article/artificial-intelligence-chatgpt-fake-case-lawyers-d6ae9fa79d0542db9e1455397aef381c [https://perma.cc/8KRK-6VUW]; Benjamin Weiser and Jonah E. Bromwich, *Michael Cohen Used Artificial Intelligence in Feeding Lawyer Bogus Cases*, N.Y. TIMES (Dec. 29, 2023), https://www.nytimes.com/2023/12/29/nyregion/michael-cohen-ai-fake-cases.html [https://perma.cc/ZNY2-B9HA]; Michael Lee, *Lawyer in hot water after using AI to present made up information: 'incompetent'*, FOX (Feb. 7, 2024), https://www.foxnews.com/us/lawyer-hot-water-after-using-ai-present-made-up-information-incompetent [https://perma.cc/64BZ-9U7D].

utilizing artificial intelligence.[14]    The *Park* court correctly rejected that argument, emphasizing that a rule about artificial intelligence use "is not necessary to inform a licensed attorney, who is a member of the bar of this Court, that she must ensure that her submissions to the Court are accurate."[15]

My comments should not be taken to persuade against the use of AI. I agree with my colleagues that such technology may be useful when used with proper supervision and vetting. But punishing an attorney for failure to verify information obtained from AI is consistent with the standard to which attorneys historically have been held. No forewarning is necessary when it is clear what standard the attorney was required to follow. The ethical practice of the law is innate in the responsibilities of each practicing attorney. It needs no reminder as each case is accepted and resolved.

---

[14] *Park*, 91 F.4th at 613–15.

[15] *Park*, 91 F.4th at 615 (emphasis omitted).